[Civ. No. 20852. Second Dist., Div. Three. July 7, 1955.]

TELEVISION ARTS PRODUCTIONS, INC. (a Corporation), Plaintiff, v. JERRY FAIRBANKS, INC. (a Corporation) et al., Defendants; NATIONAL BROADCASTING COMPANY, INC. (a Corporation), Appellant; KTTV, INC. (a Corporation) et al., Respondents.

Loeb & Loeb, Cruikshank, Jones & Gershon and Harry L. Gershon for Appellant.

Sherman, Thompson & Glover and Chas. R. Thompson for Respondents.

SHINN, P. J.—This is an action brought by Television Productions, Inc., against Jerry Fairbanks, Inc., National Broadcasting Company, Inc., corporations, and Consolidated Television Sales, a copartnership, composed of Hallett Manufacturing Company and KTTV, Inc., a corporation. The complaint prays for declaratory relief and for an accounting as to all the defendants and as against Jerry Fairbanks, Inc., for damages for breach of contract. Certain contracts are involved, all of which create rights and obligations as between the respective contracting parties in and to the ownership and use of certain motion picture films and a distribution of the proceeds from the exploitation and distribution of the same. The question on the appeal is whether the court was in error in striking out portions of a cross-complaint of National Broadcasting Company upon motion of defendants and

cross-defendants, KTTV, Inc., and Hallett Manufacturing Company. The ground upon which the portions were stricken was that the matter therein alleged was not a proper subject of a cross-complaint. It will be developed in our discussion that the claims for relief asserted in the causes of action that were stricken were directly related to the transaction which is the subject matter of the action and that they should not have been stricken.

Although the several contracts to be examined employ the customary verbosity, a greatly abbreviated digest of the same will serve the purposes of this opinion. The names of the parties will likewise be abbreviated. Television made and sold to Fairbanks 65 short motion pictures, agreed to make 65 more, and sell the same to Fairbanks, and gave to the latter an option over a five-year period to call for and acquire additional pictures of the same kind, which it made to a total number of 195. Fairbanks agreed to advance certain sums of money, to exploit the pictures and, after deducting from the returns certain items of reimbursement, to hold in trust for Television and to pay over 50 per cent of the balance remaining. Fairbanks agreed that in contracting with any third party with respect to the films it would incorporate in its agreements the provisions of its agreement with Television that were designed to establish and protect the latter's rights, and it was agreed that no contract would be effective which did not contain such protective provisions. Television-Fairbanks contract provided that any contract made by Fairbanks with third parties under which he would retain a perpetual right to share in profits, would not operate as a sale, license or other disposition of the films and that all receipts thereunder should be accounted for by Fairbanks in accordance with its agreement with Television. It was alleged that Fairbanks entered into an agreement with National by which it purported to sell, transfer and assign to National all its right, title and interest in and to said television programs, which then numbered 195, but that the agreement contained no provision preserving the rights of Television under its contract nor any provision to hold any of the profits in trust for it; at the same time Fairbanks gave National an agreement of chattel mortgage-pledge and assignment which likewise contained no provision for the protection of plaintiff's rights; National foreclosed the mortgage, purchased 195 filmed programs at foreclosure sale and

has entered into an agreement by which it purported to sell some interest in the 195 films to Consolidated. It was alleged that defendants claim that Television has no right, title or interest in or to the films or any right to any percentage of the net profits and that each defendant claims to be the sole owner of the films and entitled to all of the net profits. Television challenges the validity of the foreclosure sale and claims an interest in the films and the profits from their exploitation. In a second cause of action plaintiff asked for an accounting of profits, and in a third cause of action damages against Fairbanks occasioned through the breach by Fairbanks of its agreement to incorporate in its said agreements with National those provisions of the Television-Fairbanks agreement which were designed for the protection of Television's interest in the films and in the profits.

By its cross-complaint National alleged that it entered into an agreement with Fairbanks which antedated the Television-Fairbanks contract, which agreement contemplated and provided for the purchase by National from Fairbanks of motion pictures to be produced by the latter. It was alleged that with respect to any pictures purchased by National the agreement contained provisions as set out in the margin,[1] and that the chattel mortgage agreement also contained the following: ''Fairbanks warrants that it will own full, complete and unimpaired title to the pictures, properties and rights covered hereby, free and clear of any and all claims,

---

[1] ''13. Fairbanks represents and warrants to NBC as follows: (a) That as of the date of delivery to NBC of any motion picture produced by Fairbanks for NBC, Fairbanks will own all the right, title and interest in and to such picture and the aural and visual broadcasting rights thereto throughout the world; all the characters, titles and text therein; the exclusive rights enumerated in Paragraph 1(h) hereof; the right or world-wide license to utilize the music associated with such picture for any purpose for which NBC desires to use such picture or authorize such picture to be used; and the right to use in the exhibition of such picture and in publicizing, advertising and exploiting such picture the product or service of any sponsor or sponsors thereof, and for institutional purpose of NBC, its affiliated stations, lessees and licensees and any sponsor or sponsors, the names, characters, titles and text in and from the story and material contained in such picture, and the names, pseudonyms, photographs, likenesses and biographies of the actors and others appearing in or connected with such picture. . . .

''14. Fairbanks agrees to defend, indemnify, and to save and hold NBC harmless against and to make good to NBC and all other persons, losses, damages, expenses or judgments, including legal fees, incurred or sustained by or entered against NBC or such other persons by reason of any violation of any agreement, representation, or warranty contained in this Agreement. . . .''

rights, liens or charges thereon, which may to any extent defeat the rights of NBC. . . ."

As to Hallett and KTTV, the cross-complaint alleged in a third cause of action that National sold and transferred to KTTV and Hallett all its right, title and interest in and to said cartoons and that said agreement contained a provision as set out in the margin.[2] A fourth cause of action alleged that National had incurred an indebtedness for legal fees and court costs in the present litigation in an amount in excess of $5,000. It was alleged that a controversy existed between National and Hallett and KTTV in that National contends that it has the right to be indemnified and held harmless by Hallett and KTTV against any losses, damages, expenses or judgments incurred by cross-complaint, whereas Hallett and KTTV deny that National has any right to indemnification. The prayer of the cross-complaint was for a declaration of National's right to be indemnified in accordance with the agreements, for damages against the cross-defendants, for attorneys' fees, expenses and costs. The court struck out the third cause of action and the fourth cause of action insofar as it related to Hallett and KTTV.

Section 442 of the Code of Civil Procedure permits the filing of a cross-complaint "whenever the defendant seeks affirmative relief against any party, relating to or depending upon the contract, transaction, matter, happening or accident upon which the action is brought. . . . " The words "matter, happening or accident" were added by Statutes 1915, page 298. The Legislature could scarcely have chosen more clear and comprehensive language in extending the procedure by cross-complaint to cases in which the subject matter of the action and of the complaint are the same. Of course, they are the same if they are not different and in the present case they are not different. Fairbanks was to exploit the pictures through television mediums. In fact, as shown by the contract, an agreement had been made or was expected to be made with National for that purpose. National, when it contracted with Consolidated, did

---

[2] "Hallett and KTTV jointly and severally admit the validity of the Fairbanks debt and the Fairbanks mortgage, which mortgage will be foreclosed in the manner hereinabove indicated, and further admit the validity of the foreclosure sale and the foreclosure title obtained by NBC at said foreclosure sale, and agree to indemnify NBC against any and all claims, debt, demands, and causes of action which may be asserted against it based upon any claimed invalidity of said debt, mortgage, sale or title."

not agree to indemnify Consolidated against such claims but, upon the contrary, was to be indemnified by Consolidated. It is not questioned that the claims of Television are within the scope of the indemnity agreements. Under the theory of National, translated into issues by the pleadings, if Television recovers judgment against National both Fairbanks and Consolidated will be bound to pay National the amount of its liability. In the present action, or in a separate action brought on the indemnity agreements, the primary question would be that of the liability of National. So far as appears from the pleadings a judgment for or against National in the present action would determine the question of liability of cross-defendants under their indemnity agreements. It is the precise type of liability sought to be fixed on National against which it claims the cross-defendants have agreed to hold it harmless. If there are defenses against liability under those agreements other than the non-liability of National to plaintiff they are not to be found in the pleadings.

The purpose of the procedure by cross-complaint is to avoid such circuity of action as would be involved if National were not allowed to have its rights adjudicated under its cross-complaint. Whether a cross-complaint is proper in such a case is not an open question. Where several persons are sued upon a demand, against which one defendant has agreed to indemnify another, the latter may have his rights to indemnity determined by means of a cross-complaint. It was so held in *Eastin* v. *Roberts, Carpenter & Co.,* 19 Cal.App.2d 567 [66 P.2d 224]; *County of Humboldt* v. *Kay,* 57 Cal.App.2d 115 [134 P.2d 501]; *Sattinger* v. *Newbauer,* 123 Cal.App.2d 365 [266 P.2d 586]. The order appealed from is directly contrary to the well established rule of procedure in such cases. It was error to strike out the third cause of action of the cross-complaint and the allegations of the fourth cause of action insofar as they related to Hallett and KTTV.

The only question involved and all that we have decided is that the pleadings in their general aspects present a case in which the cross-complaint of National as against KTTV, Inc. and Hallett Manufacturing Company was properly filed. No questions respecting the interpretation or scope of the agreements or the liability of any party or parties thereunder nor as to any defenses against claims of liability are before us on the appeal. Aside from the question of the right of National to file its cross-complaint all matters in issue will

be for the trial court and no implications to the contrary may be read into our opinion.

The order is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied July 27, 1955, and the petition of respondents KTTV, Inc., and Hallett Manufacturing Co. for a hearing by the Supreme Court was denied September 1, 1955.