[Civ. No. 12597.   First Dist., Div. One.   May 26, 1944.]

CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION, Appellant, v. EDA H. WALTERS et al., Respondents.

Robert W. Kenny, Attorney General, Clarence A. Linn, Deputy Attorney General, Forrest M. Hill and Ralph R. Planteen for Appellant.

Carroll S. Bucher for Respondents.

KNIGHT, J.—Plaintiff brought this action to recover certain sums of money alleged to be due as contributions, interest and penalties under the provisions of the California Unemployment Insurance Act (Stats. 1935, p. 1226, as amended; Deering's Gen. Laws 1937, Act 8780d). The sole issue the trial court was called upon to decide was whether during the year 1937 the Big Basin Inn, in California Redwood Park, and the concessions connected therewith, were operated under an arrangement constituting a partnership. If it was, then admittedly defendant was not subject to payment of the contributions provided for in the act.

The cause was tried twice. The judge before whom it was tried first, after hearing the evidence, held that a partnership existed; but subsequently he was stricken with fatal illness and his death prevented the signing of the findings. The judge before whom the case was tried the second time reached the same conclusion and made findings to that effect. From the judgment entered thereon plaintiff appeals.

The material facts are these: For more than ten years preceding January 1, 1937, the defendant, Mrs. Walters, oper-

ated the Inn and the concessions connected therewith, under a lease from the state which by its terms expired on December 31, 1937; and at the end of 1936 she concluded she would not ask for a renewal of the lease. The open season began May first of each year and ran on into the fall. Prior to 1937 most of the twenty-five or more persons Mrs. Walters had employed to assist in carrying on the business had been with her each year for several years, some of them being students and teachers on vacation. Mrs. Walters owned the equipment in the Inn, and each year the resort and the concession had been operated at a substantial profit. At the beginning of the year 1937 Mrs. Walters decided to show her appreciation for the faithful and efficient services of those who had theretofore assisted in the successful operation of the business by inviting them to join with her in an agreement to operate the business for the remaining year of the lease and to divide the profits in proportion to the salaries theretofore received by them. An agreement was prepared and signed to that effect. It bore the title "Co-operative Agreement." Mrs. Walters was referred to therein as the proprietor, and the other parties as "persons heretofore designated as 'Employees';" and the agreement provided as follows: that "the net earnings realized from the operation of the hotel, store, lunchroom and other concessions . . . shall be divided between the persons whose names appear on sheet attached hereto marked Page 2, in the proportion representing a percentage based on the total salary or earnings of each employee for the year 1937. Net earnings shall be construed as meaning the gross earnings or income from all operating sources less cost of merchandise sold and less operating expenses including supplies, salaries, wages, insurance, taxes, interest, depreciation and all other charges or unusual expenses incident to the operation of all the various units or concessions." The substance of the third and final paragraph of the agreement was that the parties thereto were given the privilege of requesting and receiving monthly or semi-monthly the amounts accruing to them to that date on the basis of the minimum salaries shown on page two of the agreement. The agreement was drawn prior to April 15, 1937, and signed at that time by Mrs. Walters and about twelve of the other parties thereto who began work at that time in preparing the Inn and the concessions for the opening of the season; and it was signed

by the remaining parties as they reported for work during the progress of the season. Page 2 of the agreement set forth the names of the parties, the character of the work they performed and the amounts of monthly salaries to be used as the basis for the division of the profits. The first name on the list was Mrs. Walters—occupation department "manager," minimum monthly salary $150; the next was Frank Harkins —outside manager, salary $150; the third was Kwock Sing— "Chef Hotel," salary $200; the fourth was Jim Yuen—"2nd Chef Hotel," salary $175; and so on down the entire list of names.

Before the season opened Mrs. Walters notified plaintiff commission by letter of the intention to operate the resort under the plan mentioned, and she sent enclosed a copy of the agreement, with the request that if it had not been properly drawn to send a form of an agreement that would be satisfactory to the commission. In reply the commission wrote that it would send a man down to investigate; but it never did; so the resort was opened and throughout the 1937 season was operated and managed pursuant to the provisions of the agreement by a committee of the workers selected by them.

At the end of the season a profit and loss sheet was prepared showing the names and occupations of those who had signed the agreement and carried on the business, and the dates on which their services began and ended; the minimum salaries used as a basis for the division of the profits, and the total amount received by each. For example, it shows that the chef worked five months, and that his share of the net earnings amounted to $1,000 plus $248, or a total of $1,248.

The findings of the trial court were that the individuals signing said agreement "did intend to and did enter into a partnership with Eda H. Walters for the operation of said Big Basin Inn for the year 1937;" that "said agreement did establish a partnership between Eda H. Walters and the aforementioned individuals and that said Eda H. Walters and the individuals signing said agreement were partners"; that "the individuals signing said partnership agreement received as partners the same proportionate rate per month in 1937 as they had in previous years;" that "at the end of the 1937 season, each of said partners received, in addition to the above-mentioned rate, a certain amount which was derived

from the net earnings of the Big Basin Inn for the season of 1937;'' and that ''the defendant Eda H. Walters received no more and no less than her proportionate share for the year 1937, as a partner.'' It is our opinion that the evidence sustains the foregoing findings.

In support of the appeal plaintiff stresses the fact that the word ''partnership'' was not used in framing the agreement. It is held, however, that the existence of a partnership may be established although the parties may not have used the words ''partner'' or ''partnership''; nor is it essential that the parties should have known that their contract in law created a partnership. (20 Cal.Jur. p. 686.) It is the intent to do the things which constitute a partnership that usually determines whether or not that relationship exists between the parties. (*Associated Piping etc. Co., Ltd.* v. *Jones,* 17 Cal.App.2d 107 [61 P.2d 536].) Nor does it matter, as plaintiff contends, that the agreement failed to provide for a share of the losses, for it is well settled that an agreement to divide profits implies an agreement for corresponding division of losses. (*San Joaquin L. & P. Corp.* v. *Costaloupes,* 96 Cal.App. 322 [274 P. 84]; see, also, cases cited in 20 Cal.Jur. at p. 692.) Plaintiff argues that there was a want of ''community right of management'' and an absence of equal powers of representation; but the evidence shows to the contrary, for as already pointed out the business was conducted under the management of a committee of the parties to the agreement selected by them. The fact that Mrs. Walters was the owner of the equipment is unimportant for the reason that the partnership arrangement pertained only to the operation of the business. It does not appear whether or not a charge was made by Mrs. Walters for the use of the equipment; however, if such charge was made as an expense of the operation of the business it would tend to serve as further support for the conclusion that a partnership existed.

Two of the parties who signed the agreement quit before the season was over, but their withdrawal did not destroy the legal status of the partnership, for the rule is that where as here parties have contracted as to the duration of the business, the withdrawal of a member or breach of the agreement does not effect a dissolution as to the copartners. (20 Cal. Jur. p. 795.)

Plaintiff further contends that the written agreement

was unambiguous and that therefore the trial court erroneously admitted parol evidence. The very fact, however, that plaintiff questioned the meaning of certain words and clauses used in framing the agreement in itself shows that it was ambiguous. (*Body-Steffner Co.* v. *Flotill Products,* 63 Cal.App.2d 555 [147 P.2d 84].) It is quite evident that the agreement was not skillfully drawn, which doubtless accounts for the ambiguity; and since it was ambiguous the determination of the question of whether a partnership existed became one of fact upon which the court was justified in admitting parol evidence.

The remaining points urged by plaintiff are without merit and do not require special notice.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a hearing by the Supreme Court was denied July 24, 1944.