[Civ. No. 23025. Second Dist., Div. One. Nov. 7, 1958.]

TELEVISION ARTS PRODUCTIONS, INC., Plaintiff, v. JERRY FAIRBANKS, INC. (a Corporation) et al., Defendants; NATIONAL BROADCASTING COMPANY, INC. (a Corporation), Cross-complainant and Appellant; KTTV, INC. (a Corporation) et al., Respondents.

Cruickshank & Gershon and Harry L. Gershon for Appellant.

Robert A. Eaton for Respondents.

FOURT, J.—This is an appeal from a judgment for cross-defendants, on a cross-complaint wherein cross-complainant sought recovery of its attorneys' fees incurred in the success-

ful defense of an action, sometimes herein referred to as the main action, instituted by Television Arts Productions, Inc. against Jerry Fairbanks, Inc., (hereinafter referred to as Fairbanks), National Broadcasting Company, Inc., (hereinafter referred to as NBC), corporations, and Consolidated Television Sales, a copartnership composed of Hallett Manufacturing Company and KTTV, Inc., corporations.

Certain films were produced by Television Arts Productions, Inc. for Fairbanks. Fairbanks sold and purported to transfer all of its right and title therein to NBC. Thereafter NBC sold the said films back to Fairbanks, and Fairbanks to secure payment of the purchase price, delivered a chattel mortgage on the films to NBC. Subsequently Fairbanks defaulted in its payments, NBC instituted an action to foreclose the mortgage, and NBC purchased the films at the foreclosure sale. Subject to the purchase by NBC at the foreclosure sale (which sale was held on or about June 12, 1953), NBC sold the said films to KTTV, Inc. and Hallett Manufacturing Company, the respondents herein, by written agreement dated April 1, 1953, which agreement among other things, contained the following indemnity provision:

"Hallett and KTTV jointly and severally admit the validity of the Fairbanks debt and the Fairbanks mortgage, which mortgage will be foreclosed in the manner hereinabove indicated, and further admit the validity of the foreclosure sale and the foreclosure title obtained by NBC at said foreclosure sale, and agree to indemnify NBC against any and all claims, debts, demands and causes of action which may be asserted against it based upon any claimed invalidity of said debt, mortgage, sale or title."

The first amended complaint filed December 9, 1953, prayed for declaratory relief and for an accounting as against each of the defendants, and for damages for breach of contract as against Fairbanks.

On December 14, 1953, NBC made demand upon KTTV, Inc., and Hallett Manufacturing Company, and each of them, to indemnify, defend and hold it harmless against the claim of Television Arts Productions, Inc., which demand was refused, and NBC filed the cross-complaint. In a prior appeal from an order striking portions of the cross-complaint of NBC, it was determined that NBC could properly proceed by cross-complaint against KTTV, Inc., and Hallett Manufacturing Company to have its rights to indemnity determined. (*Tele-*

*vision Arts Productions, Inc.* v. *J. Fairbanks, Inc.,* 134 Cal. App.2d 293 [285 P.2d 295].)

By agreement of the parties the issues in the main action and the cross-complaint were severed for trial, and no appeal in the main action has been taken from the judgment in favor of defendants.

With respect to the cross-complaint, the trial court ruled that under the provisions of the indemnity agreement, NBC was not entitled to be reimbursed for its attorneys' fees in the amount of $10,500 expended in the defense of the main action. The present appeal is from that judgment.

Appellant contends that the written agreement between the parties is clear, complete and unambiguous; that the trial court erred in admitting parol evidence to show the intention of the parties or to explain or to clarify the agreement; and that this court, as a question of law, must independently determine the meaning of the indemnity provisions included in the agreement of April 1, 1953.

The case of *Barnhart Aircraft, Inc.* v. *Preston,* 212 Cal. 19, 22-25 [297 P. 20], is cited by appellant as authority for the proposition that whether an agreement is, or is not ambiguous is solely a question of law, and not a question of fact. The trial court in the cited case permitted the introduction of parol evidence on certain issues to explain what was termed an extrinsic ambiguity. In reversing, the Supreme Court held that the effect of some of the parol evidence received had been to write into the contract a provision not placed there by the parties. ■ However, the court (at pages 23-24) quoted from 3 Jones Commentaries on Evidence, volume 3, section 454, as follows:

" ' " . . . *Ambiguity in a written contract, calling for construction, may arise as well from words plain in themselves but uncertain when applied to the subject matter of the contract, as from words which are uncertain in their literal sense* and it may be discovered on cross-examination, without precluding its explanation, *but it must relate to a subject treated of in the paper and must arise out of words used in treating that subject.* Such an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful.

" ' "It must be borne in mind that although declarations of the parties may in some cases be received to explain contracts or words of doubtful meaning, yet no other words can

be added or substituted for those of the writing. The courts are not at liberty to speculate as to the general intention of the parties, but are charged with the duty of ascertaining the meaning of the written language." ' " (Emphasis added.)

The claim of ambiguity in the instant case relates to the meaning of words actually used in the indemnity provision of the contract, which is a subject treated by the contract.

The most recent case cited by appellant to the effect that the meaning of a written agreement is a question of law is *Continental Casualty Co.* v. *Phoenix Construction Co.*, 46 Cal. 2d 423, 429-430 [296 P.2d 801, 57 A.L.R.2d 914]. Appellant relies upon this case in making the following statement: "The determination and meaning of a written agreement and of the legal effect of the terms thereof are purely questions of law; and that determination must be made upon its independent examination of the agreement and not upon the interpretation engrafted thereon by the trial court."

It is significant that in making its determination in *Continental Casualty Co.* v. *Phoenix Construction Co., supra,* the court specifically pointed out the factual circumstances, none of which are present in the instant case. The following language appears at pages 429-430: "Copies of *insurance policies* and excess certificates which were in effect at the time of the Leming accident *were introduced into evidence by stipulation, not subject to conflicting inferences, and no parol evidence was offered in aid of construction.* Therefore, construction of the policies is a matter of law. (Citing cases.)" (Emphasis added.) The court then made these additional statements appearing at pages 437-438: "It is elementary in *insurance law* that any *ambiguity or uncertainty in an insurance policy is to be resolved against the insurer.* (Citing cases.) If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. (Citing case.) If the *insurer uses language which is uncertain* any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against (citing cases), the amount of liability (citing cases), or the person or persons protected (citing cases), the *language will be understood in its most inclusive sense, for the benefit of the insured.*" (Emphasis added.)

In *Estate of Platt,* 21 Cal.2d 343 [131 P.2d 825], also cited by appellant, the court was called upon to construe a will and to determine what interest, if any, was to be paid upon income

accruing between testator's death and the date of distribution. The court commented that the testator was unquestionably an experienced business man and then proceeded to draw certain inferences in accordance with common business experience, stating at page 351, "Any other interpretation would require the court to write into the will provisions which the testator did not make either expressly or by implication."

The court then made the following statement, at page 352, "An appellate court is not bound by a construction of the contract *based solely upon the terms of the written instrument without the aid of evidence* (citing cases), *where there is no conflict in the evidence* (citing cases), *or a determination has been made upon incompetent evidence* (citing case). Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." (Emphasis added.) In a concurring opinion, Mr. Justice Carter quoted the above statement, and then commented concerning it at pages 353-354 in the following manner: "If that rule is to be accepted, the cases in this state to the contrary should be overruled or harmonized, if possible. There is a conflict of authority which should be recognized and settled. Contrary to the rule stated, it has been held that in the construction of instruments when resort is had to the instruments alone, the interpretation of the trial court will be accepted by the appellate court, if reasonable, or if that interpretation is one of two reasonable views, it will be followed. (See for illustration the following cases: *Adams* v. *Petroleum Midway Co., Ltd.*, 205 Cal. 221 [270 P. 668] ; *McNeny* v. *Touchstone*, 7 Cal.2d 429 [60 P.2d 986] ; *Kautz* v. *Zurich Gen. A. & L. Ins. Co.*, 212 Cal. 576, 582 [300 P. 34] ; *Manhattan Beach* v. *Cortelyou*, 10 Cal. 2d 653, 660 [76 P.2d 483] ; *Teater* v. *Good Hope Dev. Corp.*, 14 Cal.2d 196, 210 [93 P.2d 112] ; *Estate of Northcutt*, 16 Cal. 2d 683 [107 P.2d 607].)"

*Oil Base, Inc.* v. *Transport Indem. Co.*, 143 Cal.App.2d 453 [299 P.2d 952], again involving the interpretation of insurance policies, is cited by appellant. It is significant that with respect to one of the policies, the court stated at page 462, "There is nothing in this policy that purports to cover anyone other than the persons named as insureds therein, nor does it expressly or by implication incorporate any of the conditions or insuring agreements of Transport's primary policy. Scherer was not a person named as an insured in this policy, and as the policy contains no omnibus clause nor any provisions

relating to the financial responsibility laws of the state, it is impossible to read into it any coverage of Scherer.'' The court then stated the applicable rule, at pages 462-463 to be as follows: ''In the absence of circumstances indicating a contrary intention, the terms used in a policy of insurance, like the words used in any other contract, are to be understood in their ordinary and popular sense rather than according to their strict legal meaning (Civ. Code, § 1644; *Pendell v. Westland Life Ins. Co.*, 95 Cal.App.2d 766, 770 [214 P.2d 392]; *Bastian v. British American etc. Co.*, 143 Cal. 287, 290 [77 P. 63, 66 L.R.A. 255]), *although their precise meaning may depend upon the subject matter of the contract and the circumstances surrounding that subject matter and the parties.*''

The following language appearing in *Clark v. Tide Water Associated Oil Co.*, 98 Cal.App.2d 488, 490 [220 P.2d 628], is cited by appellant, ''The construction of the language of a contract, *in the absence of other evidence*, is purely a question of law. Under such circumstances, a reviewing court is not bound by the construction thereof by the trial court but must 'make the final determination in accordance with the applicable principles of law.' '' (Emphasis ours.) The case involved an action for damages for breach of a lease, and on the appeal it was held that the trial court had erred in refusing to grant defendant's motion for nonsuit and directed verdict because the lease contained specific provision for notice of default as a condition precedent to taking ''any other action for the enforcement of any right or remedy available to lessor by law or equity.'' Even so, the court in reversing took cognizance that the lessor was well informed and experienced in the particular type of business involved.

■ The Supreme Court speaking through Mr. Justice Carter in *Beneficial etc. Ins. Co. v. Kurt Hitke & Co.*, 46 Cal. 2d 517 [297 P.2d 428], recently reviewed the available tests for determining the existence of an ambiguity in a written instrument, and stated at pages 524-525: ''On the question of ambiguity and the admission of extrinsic evidence, we said in *Chastain v. Belmont*, 43 Cal.2d 45, 51 [271 P.2d 498]: 'Parol evidence is also admissible to aid in the interpretation of an ambiguous contract or writing. . . . As the court said in *California Emp. Stab. Com. v. Walters, supra* [64 Cal.App.2d 554 (149 P.2d 17)], '' [*t*]*he very fact, however, that plaintiff questioned the meaning of certain words and clauses used in framing the agreement in itself shows that it was ambiguous.*

*(Body-Steffner Co.* v. *Flotill Products,* 63 Cal.App.2d 555 (147 P.2d 84).)'' ' (Emphasis added.) And: 'When the language used is fairly susceptible to one of two constructions, extrinsic evidence may be considered, not to vary or modify the terms of the agreement but to aid the court in ascertaining the true intent of the parties . . . not to show "the parties meant something other *than* what they said" but to show "what they meant *by* what they said" . . . . Where any doubt exists as to the purport of the parties' dealings as expressed in the wording of their contract, the court may look to the circumstances surrounding its execution—including the object, notice and subject matter of the agreement . . . —as well as to subsequent acts or declarations of the parties "shedding light upon the question of their mutual intention at the time of contracting." . . . To this latter point, it is said that "a construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court." *(Woodbine* v. *Van Horn,* 29 Cal.2d 95, 104 [173 P.2d 17].' *(Barham* v. *Barham,* 33 Cal.2d 416, 422 [202 P.2d 289].) ' "Once something has to be read into a contract to make it clear, it can hardly be said to be susceptible of only one interpretation. It would have been error for the trial court to read something into the contract by straining 'to find a clear meaning in an ambiguous document, and having done so exclude the extrinsic evidence on the ground that as so construed no ambiguity exists.' " *(Union Oil Co.* v. *Union Sugar Co.,* 31 Cal.2d 300, 306 [188 P.2d 470].) It is apparent that the lease, as amended, is not clear on its face, and, under the theory of the parol evidence rule that has been accepted by the majority of this court, evidence of the negotiations of the parties and of surrounding circumstances was admissible for the purpose of determining the meaning of its provisions.' *(Decter* v. *Stevenson Properties, Inc.,* 39 Cal.2d 407, 416 [247 P.2d 11].) The rules are stated in *Walsh* v. *Walsh,* 18 Cal.2d 439, 443 [116 P.2d 62] : 'When a contract is in any of its terms or provisions ambiguous or uncertain, "it is primarily the duty of the trial court to construe it *after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto."* *(Barlow* v. *Frink,* 171 Cal. 165, 172 [152 P. 290].) [Italics added.] The

governing principle as to when parol testimony may be introduced to explain the language of a contract or to ascertain the intention of the parties is clearly set forth in *Kenney* v. *Los Feliz Investment Co., Ltd.*, 121 Cal.App. 378, 386, 387 [9 P.2d 225], as follows: "It is a settled rule that when the language employed is fairly susceptible of either one of two constructions contended for without doing violence to its usual and ordinary import an ambiguity arises where extrinsic evidence may be resorted to for the purpose of explaining the intention of the parties, and that for this purpose conversations between and declarations of the parties during the negotiations at and before the execution of the contract may be shown (*Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221 [41 P. 876])." ' "

Even more recently the Supreme Court speaking through Mr. Justice Shenk, in *Halldin* v. *Usher*, 49 Cal.2d 749, 752-753 [321 P.2d 746] stated as follows: "Even if the document were a contract, as the plaintiff contends, he must further show that it is clear and unambiguous in order to justify his contention that parol evidence of its meaning was improperly admitted. He contends that by the language 'in case of death the one that survives shall have whole control of our property,' the parties intended by the use of such language that the survivor would have only a limited power to oversee and manage the property for the benefit of the children. Cases in other jurisdictions are cited by him to the effect that if it had been the intention of the parties to transfer a fee interest more apt language would have been used. On the other hand, in *Barnett* v. *Barnett*, 117 Md. 265 [83 A. 160, 162, Ann.Cas. 1913E 1284], it was held that the words 'absolute control' transferred a fee interest, and in *Welsh* v. *Gist*, 101 Md. 606 [61 A. 665], it was held that the words 'full control' also vested a fee interest. Accordingly it would seem that the words 'whole control' in the present document are not so free from ambiguity as to prevent the court from resorting to extrinsic evidence to ascertain their meaning. That evidence clearly indicates as found by the court that it was not the intention of the parties to leave the survivor destitute and without means of support as might be the case if the construction urged by the plaintiff were adopted."

Professor Wigmore has clearly expressed the matter by stating, "Once freed from the primitive formalism which views the document as a self-contained and self-operative formula, we can fully appreciate the modern principle that the

words of a document are never anything but indices to extrinsic things, and that therefore *all the circumstances must be considered which go to make clear the sense of the words,* —that is, their associations with things.'' (IX Wigmore on Evidence, § 2470, p. 227, third ed.)

 Applying the tests as formulated by the Supreme Court, we cannot say that the indemnity provisions of the contract engaging our attention are clear and unambiguous. Accordingly, when the parties alleged their respective theories with respect to the meaning of the precise language used, the trial court could properly admit extrinsic evidence, including that pertaining to the prior negotiations of the parties and the circumstances existing at the time, to assist it in determining what the parties meant by what they said.

Other arguments have been considered but do not, under the circumstances of this case, require discussion.

Judgment affirmed.

White, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 30, 1958.