53 Cal.2d 512 (1960)
ADOLPH D. LAUX et al., Respondents,
v.
WILLIAM J. FREED et al., Appellants.
Sac. No. 6892. 
Supreme Court of California. In Bank. 
Jan. 29, 1960.
 Ralph W. Rutledge and Richard E. Patton for Appellants.
 Donald W. Littlejohn and Florence J. Westfall for Respondents.
 SCHAUER, J.
 This is an appeal by defendants from only that portion of a judgment which purports to alter the terms of, and place limits on the use of a right of way granted by, a deed to them from plaintiffs, and which enjoins use of the right of way other than as limited by the judgment. We have concluded that the trial court's judgment results in varying the terms of the written grant, rather than merely interpreting it, and is without support in the record, and that the portion of the judgment appealed from should therefore be reversed. For convenience, plaintiff husband and defendant husband will hereinafter sometimes be referred to as plaintiff and defendant, respectively.
 In August, 1947, plaintiff and defendant acquired as partners certain range land in Colusa County, California.plaintiff testified that during the deer hunting seasons of 1947 through 1951, the parties and their invitees and guests hunted deer upon the range land. For the season of 1949 or 1950 they leased out the deer hunting rights, such leasing being referred to as "commercial hunting"; plaintiff and defendant, however, reserved the right to also hunt on the property with their own guests.plaintiff did not know "how many permits or licenses" to hunt were sold by the lessee in that year.
 Until 1952 the parties owned and "farmed or operated this property as partners." In that year by agreement the partnership was dissolved and the land divided into two parcels. As above shown, for five or six years preceding dissolution of the partnership both parcels had been used seasonally for deer hunting and the road which is the subject of the right of way here disputed had been used by the partners and their guests or licensees. (Likewise, as hereinafter shown, both parcels-- *516 and the deeded right of way over the road--continued to be used for deer hunting for some four years after the dissolution.) It was (at least inferentially) mutually intended that the two parcels should be substantially equal; i.e., that the division should be reasonably fair to each equal partner; and it was agreed that the flip of a coin would determine which portion each partner should receive. As partners, as hereinafter discussed in more detail, the parties were in a fiduciary relationship and each owed to the other the highest good faith and fairness.plaintiff won the toss and chose the northerly parcel; defendant thereby received the southerly part, also known as the "back half of the range" or the "brush patch."
 For many years there had been a private road (the road hereinabove mentioned) crossing the northerly portion which road was used as a means of access to the southerly portion and which at the time of the division of the land was the only road into the back part of the latter portion, although there were "other ways to get into the place."prior to the division, and as a part of the dissolution agreement pertaining to equalization of value and accessibility of each parcel, the partners agreed that "whoever got" this back half, or "southerly parcel," of the range, should also receive and have a right of way across the northerly parcel over the private access road. As a part of the theretofore orally agreed upon division defendant, to whom the back (southerly) part went, received from plaintiff a grant deed to "all the real property ... described as follows:"
 "A right of way over a road as presently constructed along the East Branch of Sand Creek, in the [legal description]."plaintiff, himself, prepared the deed following oral discussions with his partner. No limitation as to either purpose or use by defendant, of the right of way so conveyed is stated in the deed.
 Following the partition in 1952, plaintiff and defendant and their invitees and guests hunted upon each other's land as well as upon their own during the deer season of that year. In 1953, however, a boundary fence was erected and thereafter each party hunted only upon his own lands. During the 1953 through 1955 seasons defendant and his invitees and guests, apparently as had been contemplated by the parties at the time of partition, used the right of way over the road across plaintiff's land to reach the land of defendant. In 1956 both defendant and plaintiff leased "exclusive" deer hunting rights "commercially" on their respective lands to individual *517 lessees. The lessee of defendant's land "sold memberships" for hunting purposes and, pursuant to instructions by defendant, told the deer hunters that they were to use the right of way to reach the land. Inferribly it was at this time that plaintiff became dissatisfied with defendant's use of the right of way. He thereupon (some four years after the partnership dissolution and division of the property) brought this suit, alleging that the right of way was granted "for the sole purpose of the use of the defendants to reach their property, and also for ... driving and hauling cattle and feed across said right-of-way to reach defendants' property," and seeking to limit its use accordingly.
 Although as hereinabove mentioned the defendants appeal from only that portion of the judgment which purports to limit the extent of the granted right of way, it makes for a clearer understanding of the case to briefly mention other issues that were tried and resolved. The first cause of action alleged: "That on or about the 29th day of August, 1952, the plaintiffs executed and delivered to the defendants a right-of-way as follows, to wit: For Value Received, Adolph D. Laux and Joyce H. Laux, his wife, grant to William J. Freed and Bertell F. Freed, his wife, as Joint Tenants, all the real property situate in the County of Colusa, State of California, described as follows: A right of way over a road as presently constructed along the East Branch of Sand Creek, in the East half of Section 18 ... That pursuant to the provisions of said right-of-way defendants were entitled to use said road only as constructed and existing as of August 29, 1952." Plaintiffs further alleged that after the partition of the property and the delivery of the respective deeds from defendants to plaintiffs and from plaintiffs to defendants the defendants "changed the course of said road from its original location of 1952 as it was constructed when the said right-of- way was granted," and that defendants "constructed a bridge over an excavation made by the defendants" and changed the course of the stream. Plaintiffs also alleged that in 1956 the defendants commenced the construction of another bridge to replace the previous one which had been washed out and in process of reconstruction of the bridge took materials from plaintiffs' land.
 Plaintiffs in their second cause of action alleged the granting of the right of way and the terms hereinabove quoted and further averred: "That the said right-of-way hereinabove described granted by the plaintiffs to the defendants was granted for the sole purpose of the use of the defendants to *518 reach their property, and also for the purpose of the defendants driving and hauling cattle and feed across said right-of-way to reach defendants' property. That in the year 1956, the defendants leased their aforesaid described real property for deer hunting purposes during the deer hunting season of 1956; that the lessee of the hunting privileges of said premises has and is issuing memberships to numerous individuals for the purpose of hunting on the defendants' aforedescribed property. That the plaintiffs in the year 1956 leased their aforedescribed premises for hunting during the deer season of 1956." (Italics added.)plaintiffs further alleged that at the point the right of way commences on plaintiff's land they erected a gate and locked it with a chain and lock, delivering to defendants a key for the purpose of entry. "That since the commencement of deer hunting season in the year 1956, and pursuant to the specific instructions of the defendants, a large number of people who have purchased hunting rights on defendants' land are entering plaintiffs' land over the aforesaid right-of-way granted to the defendants; that plaintiffs have requested the defendants to cease delivering said keys to said deer hunters and that defendants instruct said deer hunters not to cross plaintiffs' land; but defendants ... fail and refuse, to do so; that said hunters are entering the land of the plaintiffs at the instruction of the defendants; (that the entry of said hunters upon plaintiffs' land is not for the primary purpose of gaining access to the defendants' land, but for the purpose of hunting on plaintiffs' land enroute to the defendants' land. [fn. [1]]) ... That the present use of said premises by the lessees of the defendants' is an unauthorized change of burden of the easement and is harmful to the plaintiffs' in that it has disrupted the hunting of the plaintiffs' lessee; that plaintiffs' lessee threatens to cancel his lease because of the use of the right-of-way by defendants' hunters." (Italics added.)
 The trial court found that prior to the year 1952 plaintiffs and defendants jointly owned all of the real property concerned in this litigation; "that in the year 1952 Plaintiffs Laux and Defendants Freed [by mutual agreement] partitioned said property, Plaintiffs Laux [by the toss of a coin] becoming the owners of the land" referred to by the parties as the northerly parcel and defendants Freed becoming the owners of the southerly part, or "brush patch." To effect such *519 conveyance each of the parties delivered to the other a deed conveying the grantors' respective interests. In addition to the deed from plaintiffs to defendants conveying the southerly portion the court found that plaintiffs conveyed to defendants a right of way in the language hereinabove quoted.
 As to the issues specifically presented by the pleadings the findings were as follows: "That the words 'as presently constructed' appearing in the above mentioned grant of right of way is hereby construed to refer to the direction and location of the right of way, and said words do not negative a secondary easement to maintain or repair"; that the defendants did not change the course or location of the road upon "said right of way from its original location in 1952 as said road was located when the said right of way was granted"; that the defendants did construct a bridge in the fall of 1953 which was washed out in 1955, and in 1956 defendants commenced construction of a new bridge which new bridge is improperly constructed so that the bridge itself and its approaches are hazardous.purporting to support the specific provision of the judgment from which the appeal is taken the court found that the right of way in the language hereinabove quoted "was granted for the sole purpose of the use by Defendants Freed for moving livestock, farm machinery, hay, feed, other stock raising and farm goods and chattels to and from their property lying south of Plaintiffs' property. (6) That in the year 1956, the Defendants Freed leased their aforementioned described real property for deer hunting purposes during the deer hunting season of 1956; that the Lessee of the hunting privileges of said premises issued memberships to numerous individuals for the purpose of hunting on Defendants' hereinabove described property; that since the commencement of deer season in 1956, and pursuant to the specific instructions of Defendants Freed and their Lessee, said deer hunters, who had purchased hunting rights on Defendants' land, entered Plaintiffs' land over the aforementioned right of way granted to the defendants; that Plaintiffs requested Defendants to cease instructing said deer hunters to use such access to Defendants' property; that Defendants failed and refused to permit said deer hunters to use any other access to Defendants' property and hunting area. (7) A map in evidence shows that Defendants have access to their property and hunting area by a county road and should they desire to rent hunting privileges to third persons, access to said hunting area can be gained by the above mentioned road. (8) That the use of Defendants' *520 private right of way over Plaintiffs' property by deer hunters has unreasonably increased the burden on the servient tenement; that such use was not contemplated by the parties at the time of the original grant and that such grant was made for the sole purpose of permitting Defendants to move livestock, feed, machinery and stock raising and other farm goods and chattels to and from the county road across Plaintiffs' land to that of the Defendants. (9) That the use of said right of way by the Defendants, their lessee, and third persons, for purposes other than moving livestock, feed, machinery, stock raising and other farm goods and chattels to and from the county road across Plaintiffs' land to that of the Defendants, is an unauthorized change in the burden of the easement of said right of way." (Italics added.)
 Based on the foregoing findings the judgment enjoins the defendants from maintaining or constructing the bridge referred to in the first cause of action unless the same "be built under the supervision ... of an experienced bridge builder ... or ... under the supervision of the [county] Road Commissioner," and specifies that "by way of an injunction ... Defendants are ... enjoined ... from use or permitting to be used the right of way granted for the purpose of ingress and egress to and from their property for commercial hunting privileges and that the use of the road is hereby limited to the purposes of permitting Defendants to move livestock, farm machinery, hay, feed and other stock raising and farming goods and chattels to and from their own property." It is to be observed that this injunction absolutely prohibits the defendants (either in person or by their invitees) from using the granted right of way for any purpose not listed in the judgment. Thus defendants are deprived of a use which had been an incident of the right of way road for approximately 10 years: from 1947 to 1952, before the partition; and from 1952 to 1956, after partition.
 The controlling issue before us is whether the last-quoted portion of the injunction so limiting the defendants in the use and enjoyment of their easement, can be sustained.
 [1] In the first place it is to be noted that section 1104 of the Civil Code provides that "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit *521 thereof, at the time when the transfer was agreed upon or completed." (See also Civ. Code, 801, 806; Rest., Property, 483, pp. 3018-3019.) The long-established principle embodied in this section and its application are not limited to the list of servitudes and corresponding easements enumerated in section 801 of the Civil Code, for the reason that the easements encompassed within the provisions of section 1104 "embrace every burden which by virtue of the manner of use has been imposed upon the portion of the estate not granted in favor of the portion granted." (Jersey Farm Co. v. Atlanta Realty Co. (1912), 164 Cal. 412, 415 [129 P. 593]; see also Rosebrook v. Utz (1941), 45 Cal.App.2d 726, 729 [114 P.2d 715].) Here, we need not concern ourselves with any question as to whether, technically, an easement would attach from the use of the right of way over the road during the period of partnership ownership. The significant fact is that the road was so used by the partners and their invitees and it was agreed between the fiduciaries that the one who drew the "brush patch" (southerly portion) should have the right of way along the road over the northerly portion.
 [2] Here, although plaintiff, in support of the findings and the judgment, relies upon his own testimony that prior to partition of the land the parties, then being partners, orally discussed and agreed that the right of way would be for the limited purposes alleged by plaintiff and found by the trial court, plaintiff's testimony, undisputed in this respect, shows affirmatively that from the time the parties as partners first acquired the land until they divided it by the flip of a coin some five years later and erected a boundary fence the following year, both plaintiff and defendant and their invitees and guests had hunted the entire range land and during a portion of that time had jointly leased out the deer hunting rights on a commercial basis. [fn. 2] Until plaintiff partner won the toss of the coin and knew which of the two parcels into which the land had been divided would be his, his interest was, of course, that the party who received the back half or "brush patch" should likewise receive an unlimited right of way--at least to the extent and for the purposes for which it had been used during *522 partnership ownership--over the private access road here in dispute. His true complaint seems now to be that "these people coming across interfered with the hunting on" his own parcel after the partition, and for that reason he tardily seeks to have a court write into the deed which he had prepared limitations on the use of his former partner which he asserts were discussed but which were omitted from the deed. Under such circumstances we believe that the provisions of section 1104 of the Civil Code should apply in favor of defendant to the end that he be permitted to continue the full use of the right of way in the manner it was used before partition of the property.
 [3] Manifestly, as partners in the ownership and operation of the entire property before it was divided, plaintiff and defendant bore a confidential and fiduciary relationship to each other. (Nelson v. Abraham (1947), 29 Cal.2d 745, 750 [6] [177 P.2d 931]; 37 Cal.Jur.2d 613-614, 46, and cases there cited; 68 C.J.S. 516-517, 76; 40 Am.Jur. 217, 128.) As partners, neither had the right to take an unfair advantage or secure an undue benefit, and the burden is on the one seeking an advantage to show complete good faith and fairness toward the other. [4] The duty of good faith and the burden of showing it extend to the dissolution and liquidation of partnership affairs, as well as to the sale by one partner to another of his interest in the partnership. (Arnold v. Arnold (1902), 137 Cal. 291, 296 [70 P. 23]; see also 37 Cal.Jur.2d 619-621, 51; 40 Am.Jur. 218, 129.) [5] It follows that if plaintiff, who drafted the right of way deed in the present case, intended that use of such right of way be limited or restricted, particularly more limited or restricted than during the period of partnership ownership of the entire property, it was his duty to so disclose by incorporating any such limitations in the grant itself, rather than some four years after the dissolution, and after continuing use of the right of way as granted, seeking court assistance to prevent defendant from making full use in the customary manner of the way granted.
 [6] Insofar as construction of the grant of the right of way is concerned section 1069 of the Civil Code declares that "A grant is to be interpreted in favor of the grantee, except that a reservation in any grant ... is to be interpreted in favor of the grantor." "[T]he rules applicable to the construction of deeds generally apply with full force and effect to instruments conveying easements or other similar rights or privileges." *523 (Eastman v. Piper (1924), 68 Cal.App. 554, 561 [6] [229 P. 1002]; 17 Cal.Jur.2d 102, 10.)
 [7] One of such rules is that if the language of a deed is plain, certain and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed. (See Joerger v. Pacific Gas & Electric Co. (1929), 207 Cal. 8, 32 [26] [276 P. 1017]; Fitzgerald v. County of Modoc (1913), 164 Cal. 493, 497 [129 P. 794, 44 L.R.A. N.S. 1229]; Pinsky v. Sloat (1955), 130 Cal.App.2d 579, 588-589 [3-11] [279 P.2d 584]; Code Civ. Proc., 1856, 1860; 15 Cal.Jur.2d 521-522, 122, 18 Cal.Jur.2d 737-738, 255; id 768-770, 278.) Smith v. Worn (1892), 93 Cal. 206, 214 [28 P. 944], relied upon by plaintiff, in which evidence of surrounding circumstances was considered by the court, involved construction of the very language used in the deed conveying the right of way, to determine whether it might be obstructed by gates or bars, and is not persuasive to the contrary of the conclusion we have stated.
 [8] There appears to be nothing unclear, uncertain or ambiguous, at least as relevant to the issues of this case, in the words "For Value Received, Adolph D. Laux and Joyce H. Laux ... grant to William J. Freed and Bertell F. Freed ... as Joint Tenants, all the real property situate in the County of Colusa ... described as follows: A right of way over a road as presently constructed along the East Branch of Sand Creek, in the East half of Section 18" etc.perhaps one might argue ambiguity or uncertainty as to the meaning of "as Joint Tenants" but that criticism does not apply to "A right of way over a road as presently constructed along the East Branch of Sand Creek" etc. But even if we assume that in some situations the facts surrounding the execution of the deed may be shown in evidence to explain the language used in a deed, that is not the purpose or objective of the plaintiffs here.
 There is not even a suggestion of overreaching of plaintiffs by defendants. Nor is there any contention that defendants misled plaintiffs or misrepresented the terms of the dissolution of the partnership.plaintiff Adolph Laux himself prepared the deed. He prepared it, according to his testimony, after discussion with defendant William Freed of various requests for further and differing rights of way.
 Section 1066 of the Civil Code specifies that "Grants are to be interpreted in like manner with contracts in general except so far as is otherwise provided in this article." (Sections *524 1066 through 1072 constitute "this article.") Section 1625 provides, "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." [9] Further, an instrument in writing is construed most strongly against the party who drafted it or caused it to be drafted. (Civ. Code, 1654; Taylor v. J. B. Hill Co. (1948), 31 Cal.2d 373, 374 [1] [189 P.2d 258]; Estate of Rule (1944), 25 Cal.2d 1, 13 [8] [152 P.2d 1003, 155 A.L.R. 1319]; 12 Cal.Jur.2d 363.) [10] Plaintiff's own testimony here shows that the intention of the parties was to make (and the law prescribing the duties of fiduciaries would require) a substantially equal division of the property and equipment which they owned as partners, that following the toss of the coin defendant had requested two further rights of way in addition to the existing one and that the parties had negotiated and argued out the matter including use for deer hunting, and that plaintiff caused the deed to the right of way to be prepared in the form hereinabove quoted and deposited with the title company. [fn. 3] If plaintiff had intended (and the partners had agreed) that defendant himself, and hunters invited or licensed by defendant, were to be barred from use of the existing right of way--the sole right of way granted by plaintiff to defendant--it was incumbent on the plaintiff to have caused the deed he prepared and delivered to so state. In any event, under the circumstances shown here, the prior negotiations which preceded the written document were merged into and superseded by the writing, and cannot now be resorted to by plaintiff to so limit the terms of the grant as to deprive his former partner of the right to continue using the road as it had been used consistently before the dissolution of the partnership.
 This conclusion is further supported by the provision of *525 section 806 of the Civil Code that "The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." [11] And in Tiffany, Real Property, volume 3 (3d ed.), section 803, pages 322-323, it is said: "A grant in general terms of an easement of way will ordinarily be construed as creating a general right of way capable of use in connection with the dominant tenement for all reasonable purposes. ..." [12] Also, in Thompson on Real Property, volume 2 (Perm. ed.), sections 577-578, pages 183-186, the rule is stated as follows: "A grant of a right of way unrestricted as to purpose is a grant of a way to be used for any purpose whatever. ..." (See also 38 Cal.L.Rev. 444; 28 C.J.S. 767-768, 87; id 769, 90; 17A Am.Jur. 727-729, 119; Drexler v. Hufnagel (1946), 76 Cal.App.2d 606, 609 [173 P.2d 677].) We conclude that the record does not support the limitations imposed by injunction on the right of way granted to defendants.
 For the above stated reasons, we conclude that the record fails to provide a legally sufficient basis for judicially writing into plaintiffs' deed of an unlimited right of way, the restrictions embodied in the injunction.
 The portions of the judgment appealed from are reversed.
 Gibson, C. J., Spence, J., McComb, J., Peters, J., and White, J., concurred.
 TRAYNOR, J.
 I concur in the judgment but wish to add that I adhere to the views with respect to the so-called rule against admitting extrinsic evidence to interpret apparently unambiguous written instruments set forth in my concurring opinion in Universal Sales Corp. v. California etc. Mfg. Co., 20 Cal.2d 751, 776 [128 P.2d 665], and dissenting opinion in Estate of Rule, 25 Cal.2d 1, 20-22 [152 P.2d 1003, 155 A.L.R. 1319]. (See also Union Oil Co. v. Union Sugar Co., 31 Cal.2d 300, 306, footnote [188 P.2d 470].) Its fatuity is demonstrated by holdings that the conflicting contentions of the parties as to the meaning of a written instrument alone supply the ambiguity necessary to take the rule out of play. (Beneficial etc. Ins. Co. v. Kurt Hitke & Co., 46 Cal.2d 517, 524 [297 P.2d 428]; Chastain v. Belmont, 43 Cal.2d 45, 51 [271 P.2d 498]; Television Arts Productions, Inc. v. Jerry Fairbanks, Inc., 164 Cal.App.2d 842, 848 [331 P.2d 117]; California Emp. etc. Com. v. Walters, 64 Cal.App.2d 554, 559 [149 P.2d 17].) Litigation as to the meaning of language arises *526 only from disputes as to meaning; a rule applicable only when no dispute exists is of no assistance in resolving a dispute that does exist.
 The rule is of no assistance whatever in determining the meaning of the deed in this case. Its meaning can only be made plain by extrinsic evidence. Certainly it is logic run riot to rely on extrinsic evidence to establish that the meaning is plain and then to hold that such evidence cannot be considered because the meaning is plain. The suitability of defendants' land for deer hunting was established by the extrinsic evidence of its use for that purpose both before and after the execution of the deed in question. In the absence of evidence establishing that the meaning the parties attached to the language of the grant excluded use of the easement to gain access for hunting, the grant in general terms must be interpreted as permitting that use. (Drexler v. Hufnagel, 76 Cal.App.2d 606, 609 [173 P.2d 677]; see Pasadena v. California- Michigan etc. Co., 17 Cal.2d 576, 582 [110 P.2d 983, 133 A.L.R. 1186]; 3 Tiffany, Real Property (3d ed.), 803, pp. 322-323.)
 There is no evidence in the record to support a restrictive interpretation of the deed. It is true that plaintiff testified that before the property was partitioned, the parties orally agreed that "whoever got the back half of the range should have a right of way up through the property for the purpose of caring for his cattle in winter time, or hauling hay up to them, or haul material, whatever he needed to care for his property, in maintaining fences, and so forth." As an agreement, this oral understanding was superseded by the subsequently executed deed. (Civ. Code, 1625; Hotle v. Miller, 51 Cal.2d 541, 546 [344 P.2d 849]; see 3 Corbin on Contracts, 574, pp. 222-223.) As extrinsic evidence of the meaning of the deed, it does not support the trial court's interpretation. Thus, the oral understanding did not expressly exclude access for deer hunting, and other testimony of plaintiff establishes that the parties were not in agreement as to the scope of the easement intended immediately before the deed was executed. At that time defendant wished additional rights of way to facilitate hunting, and plaintiff wished to prohibit use of the right of way by hunters altogether. This controversy was resolved when the parties completed the dissolution of their partnership by the execution and acceptance of the deed granting the right of way. Under these circumstances the deed cannot reasonably be interpreted as prohibiting access to defendants' land for deer hunting, an existing and reasonable *527 use of the land. In view of the controversy, had the parties agreed on a more restrictive use, surely they would have adopted language so providing.
 To attempt to support this conclusion by holding that the very evidence on which it is based may not be considered is logically indefensible. Moreover, the giving of lip service to the rule that an apparently plain and unambiguous meaning must govern, invites the error that the trial court committed in this case, namely, rewriting a written instrument. Implicit in the statement that when the language of a written instrument is "plain, certain and unambiguous" extrinsic evidence will not be considered "to add to, detract from, or vary its terms" is the idea that if the language is not "plain, certain and unambiguous," extrinsic evidence may be considered for those purposes. Whether or not the language of a written instrument appears, "plain, certain and unambiguous," extrinsic evidence is not admissible to "add to, detract from, or vary its terms." It is admissible to determine what those terms are. (Barham v. Barham, 33 Cal.2d 416, 422-423 [202 P.2d 289].) The court must determine the true meaning of the instrument in the light of the evidence available. It can neither exclude extrinsic evidence relevant to that determination nor invoke such evidence to write a new or different instrument.
NOTES
[fn. [1]] [1]. The record shows that on motion of plaintiffs this clause in parentheses was stricken from plaintiffs' copy; but it remains as a fact averred under oath for significance in understanding the issues here.
[fn. 2] 2. Plaintiff testified that during the period he owned the property jointly with defendant there was "commercial hunting done on the premises ... it was the summer of either '49 or '50. ... [T]he range land was leased out in one of those years to Mr. Al Lawrence"; that plaintiff did not "know how many permits or licenses that Mr. Lawrence sold in the year that he had the commercial hunting rights on the range."
[fn. 3] 3. Plaintiff testified that before the right of way deed was finally prepared and delivered to defendant, he and defendant had three or four conversations concerning the matter; that defendant told plaintiff "that the present road wasn't going to be adequate enough ... to transport the hunters across my property to get to the ridges on top ... on his part of the range" (italics added); defendant wanted "three rights of way ... He wanted first the right of way as was then existing ... And he also wanted one that went around the Blevins house ... To the east of the house. [And] He wanted another one that went over the hill on the west" but plaintiff "told him no."plaintiff himself "went into Ed Barrell's office and drew up the right of way ... Q. And the deed to the right of way was also placed by you with the title company, is that right? A. Yes."