[Civ. No. 11570. Third Dist. Apr. 11, 1968.]

BEATRICE R. NORRIS, Plaintiff and Appellant, v. STATE
OF CALIFORNIA ex rel. DEPARTMENT OF PUBLIC
WORKS, Defendant and Respondent.

James K. Norman for Plaintiff and Appellant.

Harry S. Fenton, Robert F. Carlson, Kenneth G. Nellis and Alfred Gawthrop, Jr., for Defendant and Respondent.

PIERCE, P. J.—The suit is by the owner of an underlying fee of certain lake front property (Lake Tahoe) to enjoin defendant State of California, which owns a right-of-way thereover (a portion of State Highway No 89), from maintaining a "vista point" and "roadside rest" on said property.

The issues framed in the court's pretrial order were: (1) whether "the deed of . . . [plaintiff's] predecessor in interest . . . [should] be reformed to describe only the area over which the 24-foot roadway was constructed . . . , it being plaintiff's contention that that was the intent of the parties at the time of the deed." (2) "If the deed is not reformed . . . [whether] the defendant State [was] surcharging the easement by its activities. . . ." The trial court found that there was no proof justifying a reformation of the deed mentioned, and also found there had been no surcharging of the easement. It denied an injunction. We affirm the judgment.

The appeal is limited in scope. Although plaintiff's brief refers to a right of reformation, no proof was adduced to support a finding that the written grant of easement failed to express the mutual intention of the parties. (42 Cal.Jur.2d, Reformation of Instruments, § 4, p. 575, and cases cited.) The issue of reformation, therefore, is not even arguable. Discussion will be limited to the question of the surcharging of the easement.

In 1930 Alice R. Richardson was the owner of a 36-acre parcel of lakeside property on the western shore of Lake Tahoe. On February 11, 1930, she granted, conveyed and dedicated to the state an easement or right-of-way for highway purposes "upon, over and across" her property. The portion so granted was described by metes and bounds. The provisions of the grant will be discussed with greater particularity below.

The same year the state built a part of State Highway No. 89, including that portion crossing the Richardson property. The width of the roadway was 20 to 24 feet. During the period from 1930 until 1964, no use was made by the state of the remaining area included within the described grant. Specifically no use was made of the area lying between the easterly edge of the roadway and shore line of Lake Tahoe. (For convenience we will refer to this as the "lake shore area.") In 1964 the state commenced to utilize a portion of the lake shore area as a "vista point" and "roadside rest." This it did intending to act under the grant and with legisla-

tive authorization. Article 7 of the Public Resources Code, section 5080 et seq., enacted in 1957 (Stats. 1957, ch. 2113, p. 3744) provides for roadside rests. Said section 5080 declares in part:

"Many persons traveling along the state highways make brief stops for the purpose of eating their meals and resting before resuming their travel. At the present time there are insufficient places where such stops can be made in safety and where free facilities are provided for eating lunches and disposing of the litter therefrom. . . .

"It is the intent of the Legislature that the locating, constructing, equipping and maintaining of roadside rests be initiated on a state-wide experimental basis. . . ."

(The same section recognized that such facilities could be provided by the Department of Public Works or the Department of Parks and Recreation under existing law.) By section 5081 a "roadside rest" is defined as "an area adjacent, or within reasonable proximity, to a state highway, suitable during daytime hours for the eating of lunches and for other brief stops taken by the traveling public along such highways." Article 7 of the Streets and Highways Code, section 218 et seq., was enacted in 1963. (Stats. 1963, ch. 992, p. 2254.) It also encompasses the establishment of roadside rests. Section 220 thereof expressly provides for the parking of vehicles.

The trial court found that the state's added 1964 use of the property in question had included: (a) removal of trees and other vegetation; (b) depositing of sand and gravel over the general area; (c) removal of signs posted by plaintiff declaring the property to be private and the posting of a sign declaring the property to be state property; (d) placing upon the strip one picnic table and chaining the same to a tree; and (e) construction of a 12-foot surfaced area adjacent to the existing roadbed for the parking of cars.

In 1958 plaintiff had acquired a portion of the property once owned by Alice Richardson. Plaintiff was not the latter's immediate successor. Acquisition had been by mesne conveyances. Plaintiff's grantors were the Nielsons who had owned the property for 15 years. Plaintiff and the Nielsons during their ownership had used the lake shore area for picnics and other informal gatherings of social guests and "business acquaintances."[1]

---

[1]The quoted phrase is used in a stipulation of facts. Since it also appears that plaintiff has cottages used as rental units on a portion of her property, we assume that the phrase alludes to her tenants.

Plaintiff was the only witness at the trial. She testified that she had constructed ramps for the launching and retrieving of boats and had kept boats moored in the lake. These facilities had also been used by herself, her visitors and her tenants.

When the state had established the facilities described above, plaintiff had protested. This suit was filed in 1965.

Plaintiff did not contend that the state or members of the public were creating a nuisance and that issue is not before us.[2] She testified, however, that the public had damaged her boat ramps; that they had used the facilities furnished by the state as a campground; that some motorists, including those driving trailers or campers, had camped for several nights. Also she testified that since no toilet facilities had been provided by the state, people using the area would sometimes request use of her rest rooms or would relieve themselves on the vacant lot next door. From our reading of her testimony, however, we do not conclude that she thought installation of rest rooms would benefit her. To the contrary.

 Where a right-of-way has been created by grant the scope and extent of the easement is to be determined by the terms of the grant. If acquired by prescription, the scope and extent is determined by use continued over the statutory period. (Burby, *Land Burdens in California, Easements* (1930) 4 So.Cal.L.Rev. 115, 133; see also *Laux* v. *Freed,* 53 Cal.2d 512, 525 [2 Cal.Rptr. 265, 348 P.2d 873].) No prescriptive use is involved here, and obviously no rights could be derived by the state solely from the legislation described without condemnation. We must turn then to the 1930 Richardson grant. No extrinsic evidence which would have any relevance to disclose the grantor's intent was offered.[3] In any

---

[2]The following colloquy between counsel appears in that portion of the record where plaintiff's counsel offered evidence regarding the behavior of the public: "MR. GAWTHROP [counsel for the state]: Are you now saying what we are doing is we are not surcharging the easement but creating a nuisance? MR. NORMAN [plaintiff's counsel]: No, I can't say that, because I haven't raised it in the pleadings, but I am saying the use made by the public is not really confined to coming on the property at noon and having a picnic and leaving the property at one-thirty. . . . They don't come on the property just for picnics, but they use it as a place to live.''

[3]Plaintiff offered testimony of her exercise of dominion over the lake shore area after her acquisition in 1958 and of similar acts by her grantors, the Nielsons. Her counsel agreed with the court's observation that neither she nor her predecessor could gain a right by adverse possession. When counsel stated that the evidence was proffered to prove the intent of Alice Richardson, the original grantor, back in 1930, the court ruled correctly that this testimony was too remote to be admissible.

event ''The intention of the parties to a grant is to be gathered, if possible, from the instrument itself and is determined by a proper construction of the language used, rather than by resorting to extrinsic evidence.'' (*Palo Verdes Corp.* v. *Housing Authority* (1962) 202 Cal.App.2d 827, 835 [21 Cal.Rptr. 225].) Analysis and a summarization of the provisions of the Richardson grant to the state show the following: the declared consideration was $2,500, and ''the benefits to accrue to . . . [grantor] by reason of the location and establishment of the State highway upon, over and across said lands.'' Grantor does ''hereby grant, convey and dedicate . . . [to the state] the right of way *and incidents thereto* for said State highway. . . .'' (Italics added.) A parcel of land ''containing thirty-six (36) acres'' is described by metes and bounds. That parcel is declared to be the property belonging to her ''upon, over and across'' which the right of way is to run. That, however, was not the sole parcel described. The grant states: ''Said State highway right of way hereby granted, conveyed and dedicated is more particularly described as follows, to-wit: . . . . (The description which is set forth is by metes and bounds. It closes with the following: ''Said right of way above described contains 1.98 acres. . . .'') From the map in the record the land so described is shown NOT to be just the 24-foot strip constituting the roadway. It consists of a parcel of land the width of which extends from its westerly boundary 45.6 feet west of the center line of the roadway to its easterly boundary 148.4 feet east thereof, said easterly boundary being the meander line of west lake shore of Lake Tahoe. Thus, the land described includes the ''lake shore area.'' ▮ In short, there is expressly and specifically dedicated for highway purposes a parcel of land *a large portion of which was not then intended to be used solely for the then about-to-be-built, 24-foot road* and—since it extended easterly to the very lake shore—could not conceivably have been intended ever to be occupied entirely by a roadway proper.

Incidental additional provisions of the grant include a waiver of all claims for damages by reason of highway location, a right to remove trees and growth. And finally the right is granted ''to use the same [i.e., the right of way] in such manner as the said grantee may deem proper, needful or necessary in the construction, reconstruction and/or maintenance of said State highway and/or any road or highway constructed, *or to be constructed,* . . . .'' (Italics added.)

▮ A grant is to be interpreted liberally in favor of the

grantee. (Civ. Code, § 1069.) This applies to a grant of an easement. (*Laux* v. *Freed, supra,* 53 Cal.2d 512, 522.) ▮ Many California cases have held that in the grant or dedication of land for highway purposes " '[c]hanging conditions, in customs, usages and improvements,' " and "changes in the prevailing mode of transportation . . . since the original dedication" are to be assumed as being contemplated. The quotations are from the most recent of those cases, *Faus* v. *City of Los Angeles* (1967) 67 Cal.2d 350, 357 [62 Cal. Rptr. 193, 431 P.2d 849]. In *Faus* the earlier California cases are cited and discussed, including the leading case of *Wattson* v. *Eldridge* (1929) 207 Cal. 314 [278 P. 236]—in which the "Venice of America" was metamorphosed into the Venice-west of today. The *Wattson* case states (at p. 321): "It cannot reasonably be supposed that the dedicator intended otherwise than that they should respond to whatever demands, new improvements and increased facilities might make upon them, so only that such demands must always be consistent with their character and purpose as public highways." To repeat citations and discussion here of all of the cases cited in *Faus, supra,* would be time-wasting redundancy. *Faus* says 67 Cal.2d at p. 360): ". . . When there is no extrinsic evidence or 'no conflict' in such extrinsic evidence as has been introduced, 'we must make an independent determination of the meaning' of a legal instrument." (Citing *Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) *Faus* holds that where a dedicated street railroad right of way had been converted to a paved highway for motor buses as an updating of the city's transportation system, this, as a matter of law, must be assumed to have been within the contemplation of the original grantors of the public easement. (67 Cal.2d at pp. 361-362.) That holding is agreeable to the rule stated in 3 Tiffany, Real Property (3d ed.) section 926, page 600: "When land is taken or dedicated for use as a highway, the taking or dedication should be presumed to be not merely for such purposes and uses as were known and customary, at that time, but also for all public purposes, present or prospective, whether then known or not, consistent with the character of such highways and not actually detrimental to the abutting property."

▮ Under those authorities we hold (as the trial court did) that establishment by the state of roadside rests and a

vista point on this highway right of way was not a surcharging of the easement granted by Alice Richardson in 1930 but a contemplated prospective modernization of a legitimate highway use. This interpretation of the deed is fortified by the fact that by the Richardson grant there is not merely a grant of a 24-foot wide strip from a described center line, although both the description of center line and the width of the then contemplated road was then known. Neither was there a grant of what plaintiff calls a ''floating'' easement. There was a conveyance and dedication of a fixed parcel of land—the whole shore line area—described by metes and bounds.

That is at least one reason why the authorities cited by plaintiff pertaining to ''floating'' easements[4] are distinguishable. They encompass cases such as *Ballard* v. *Titus* (1910) 157 Cal. 673 [110 P. 118] ; *Youngstown Steel etc. Co.* v. *City of Los Angeles* (1952) 38 Cal.2d 407 [240 P.2d 977] ; *Cummins* v. *Levy* (1953) 116 Cal.App.2d 610 [253 P.2d 975, 255 P.2d 29]. In such cases the undefined right of way has been held to be limited to that ''suitable and convenient'' for ordinary uses. Also included are the so-called ''pipeline'' cases, exemplified by *Winslow* v. *City of Vallejo* (1906) 148 Cal. 723 [84 P. 191, 113 Am.St.Rep. 349, 7 Ann.Cas. 851, 5 L.R.A. N.S. 851]. In that case the parties were held themselves to have contemporaneously construed the scope and extent of an easement when the holder of the dominant tenement constructed and maintained a 10-inch pipe for 9 years. █ Here, by contrast, the size of the right of way was fixed and defined by precise description. We have simply to decide what the parties intended by ''any road or highway constructed.'' More particularly we determine whether a ''vista point'' and ''roadside rest'' is a highway purpose. We hold that it is.

On the other hand, the holder of a dominant tenement may not unduly increase the burden of the holder of the servient tenement. In 3 American Law Reports, Third Series, page 1242, in an annotation to *Wall* v. *Rudolph* (1961) 198 Cal. App.2d 684 [18 Cal.Rptr. 123, 3 A.L.R.3d 1242], the rule is well stated (on p. 1260) :

█ ''The most comprehensive restriction that is imposed upon the use of a general right of way by the dominant owner

---

[4]Plaintiff does not define a ''floating'' easement. From her use of the term we may devise a definition: an easement in which servient tenement is generally described, but the location and dimenions of the dominant tenement to be superimposed therein is not described.

is that he may not so use the way as to unduly increase the burden upon the servient tenement. Thus, the rule that the right of way cannot be used to burden the servient tenement to an extent greater than was contemplated at the time of the grant has been applied as a test in determining the reasonableness of particular uses, both in terms of their extent and their manner. . . .

" [W]here a changed or improved use of the dominant tenement is within the normal and reasonable development of the dominant estate, the resulting changed or increased use of the right of way is by and large regarded as reasonable." (And see cases collected in § 6, p. 1272 et seq. of said annotation.)

The trial court did not hold, and we do not hold, that a highway purpose embraces use of the property for a campground or a bathing beach. From observation, if not as a matter of judicial notice, roadside rest areas are signed, and no doubt should be policed to some extent, to forbid public use for camping and bathing. Any conversion of the area by the state into a campground or a public beach, or any other extension of the public use beyond the limits of the roadside rest as defined by statute, would, as we see it, constitute a taking by the state in the exercise of its power of eminent domain.

A vista point is certainly not an added burden upon the abutting property (the servient tenement). *Properly used* a roadside rest is not either. We emphasize *"properly used"* advisedly. If tables are provided to encourage the traveling public to lunch while it pauses to rest, then suitable containers for the ordinary litter inevitable to such use must also be provided with a concomitant obligation upon the state to dispose of the refuse deposited therein.

The sign presently in place proclaiming this to be "state property" is no more appropriate than was the sign declaring it to be "private property." The property is neither, and it is both. The sign in place is susceptible to misinterpretation by users of the roadside rest that the public's right of use is more extensive than that which actually exists. The sign must come down. It should be replaced by one advising the public of the limitations of the public easement as herein expressed. It is unnecessary that the injunctive powers of a court of equity be invoked at this time. We assume immediate removal and replacement will be effected.

Judgment is affirmed.

Friedman, J., and Regan, J., concurred.