## PULLIAM *v.* BENNETT ET AL.

EJECTMENT—CONSTRUCTION OF DEED.—G. being the owner of the Bosquejo or Lassen Rancho, agreed to convey to F. and W. 5,000 acres of land from the lower end of the rancho—500 acres to F. and 4,500 to W.—and in pursuance of the agreement, on the same day executed deeds to F. and W.; but, as to which was delivered first, the evidence was conflicting. The land conveyed to W. was described as "being 4,500 acres of land, taken off of the lower or most southerly portion of the rancho,  *  *  *  extending the full width of said rancho, from the westerly to the easterly boundaries thereof, and as far above the southerly line as shall be necessary to include  *  *  *  4,500 acres of land, provided that no part of the land hereby conveyed  *  *  *  shall be or extend north of a straight line drawn from a point on the Sacramento, at a distance of one Spanish league south of the mouth of Deer Creek, due east to the easterly boundary line of said rancho; and if there should not be 4,500 acres of land between the said line and the southerly line of said rancho, the balance or residue of said land, to make up the said 4,500 acres, shall be taken off from the south-easterly corner of said rancho, in a square form." The land conveyed to F. was described as "being 500 acres of the rancho;  *  *  *  it being expressly understood that the said 500 acres shall be taken off of the south-westerly corner of said rancho, in a rectangular form, the frontage along the Sacramento River to be *not more than one-half the depth;* provided that no part of the land conveyed shall be or extend north of a straight line," etc.—(being the same as described in the first deed). In an action of ejectment brought by grantees of F. against subsequent grantees of G., *held,* that the deeds, being executed at the same time, were to be regarded as parts of one and the same transaction; and that, reading the deeds together, it must have been understood and agreed that the W. deed should be first located; and that the 500 acres conveyed to F. were to be located on the south-westerly corner of the rancho, *after* the location of the Wilson tract.

ID.—STATUTE OF LIMITATIONS—ADVERSE POSSESSION.—*Held, further,* upon the evidence, that the possession of the land by G., after his conveyance to F., was not adverse.

APPEAL from an order granting the plaintiff a new trial, in the Second District Court, County of Butte. KEYSER, J.

The facts are stated in the opinion.

*Burt & Hamilton,* and *Geo. Cadwalader,* for Appellant.

The deed to Ford conveys land in the south-westerly corner of the grant, and does not convey to him any portion of the land described in the complaint. The preponderance of the evidence was, that the Ford deed was to be delivered, and was delivered, first. Judge Sexton was the trial judge—the judge who listened to the witnesses, and weighed their testimony.

The Court has uniformly held, that if there was a conflict in the evidence, the decision of the judge who tried the case should not be disturbed. (*Gunter* v. *Sanchez*, 1 Cal. 45; *Lick* v. *Madden*, 36 id. 213; *Livermore* v. *Stine*, 43 id. 275; *Price* v. *Sturgis*, 44 id. 591.) The motion for a new trial should have been denied, and this Court will not regard the order of Judge Keyser, granting a new trial, as the decision of the Court trying the case.

*Belcher & Belcher*, for Respondents.

The deeds to Wilson and Ford having been made at the same time, and as parts of one transaction, are to be read together; and when so read, they show that it was intended and understood by the parties that the 500 acres conveyed to Ford should be located in a rectangular form at the south-westerly corner of the rancho, after the 4,500 acres to Wilson had been taken off. In each deed a similar expression is used; in one, " the south-easterly corner of said rancho," and in the other, " the south-westerly corner of said rancho." But the former evidently refers to the " south-easterly corner," where " the balance or residue " is to be located, if the whole 4,500 acres cannot be taken south of the line referred to.

McKEE, J.:

The action is ejectment. The land in dispute was originally part of the Bosquejo or Lassen Rancho, lying partly in the County of Tehama and partly in the County of Butte. Plaintiffs claim title to it by mesne conveyances from one Henry Gerke, who was the owner of it. The rancho was patented in 1862. But in 1856 there was pending between Gerke and one Henry Ford and H. L. Wilson a controversy for one-third of the rancho. This controversy was compromised and settled by Gerke agreeing to convey to Wilson and Ford 5,000 acres from the lower end of the rancho—4,500 acres to Wilson, and 500 acres to Ford. In performance of his agreement, Gerke had two deeds prepared, one to Wilson for 4,500 acres, and another to Ford for 500 acres. In the Wilson deed the land is described as follows: "All that certain tract or parcel of land situated in the County of Tehama, said

State, described as follows, to wit: being four thousand five hundred (4,500) acres of land taken off of the lower or most southerly portion of the rancho known as the Bosquejo or Lassen Rancho, extending the full width of said rancho, from the westerly to the easterly boundaries thereof, and as far above the southerly line of said rancho as shall be necessary to include or contain four thousand five hundred acres of land; provided, that no part of the land hereby conveyed, or intended to be conveyed, shall be or extend north of a straight line drawn from a point on the Sacramento River, at a distance of one Spanish league south of the mouth of Deer Creek, due east to the easterly boundary line of said rancho; and if there should not be four thousand five hundred acres of land between said line and the southerly line of said rancho, then the balance or residue of land, to make up the said four thousand five hundred acres, shall be taken off from the south-easterly corner of said rancho, in a square form; the westerly boundary of said last named square not to extend within one Spanish league of the Sacramento River."

The premises conveyed by the Ford deed are described as follows: "All that certain tract or parcel of land situated in the County of Tehama, said State, described as follows, to wit: being 500 acres of the rancho known as the Bosquejo or Lassen Rancho. It being expressly understood that the said 500 acres shall be taken off of the south-westerly corner of said rancho in a rectangular form, the frontage along the Sacramento River to *be not more than* one-half the depth. Provided, that no part of the land hereby conveyed, or intended to be conveyed, shall be or extend north of a straight line drawn from a point on the Sacramento River one Spanish league south of the mouth of Deer Creek, due east to the easterly boundary line of said rancho."

Both deeds were executed on the 17th of December, 1856. There is some conflict of evidence as to which of them was first delivered; Wilson claiming that his deed was delivered before the Ford deed; Gerke that both deeds were delivered on the same day, but the Ford deed before the other; and the attorney of Gerke also testified that the Ford deed was first delivered. The preponderance of evidence is that they were both delivered

before acknowledgment, and that there was not more than an interval of a day between their delivery. The Ford deed was acknowledged in January, 1857; Wilson's a month later, viz., in February, 1857. The Wilson deed was recorded in Tehama County, April, 1857; Ford's not until June, 1857.

The defendants are in possession of the land, claiming also under deeds from Gerke, made on the 6th and 10th of December, 1875; but when they obtained their deeds, the plaintiff's deed was of record, and they knew that the plaintiff claimed the land.

However the fact may be as to the delivery of the Ford and Wilson deeds, the question remains whether the description in the Ford deed includes the land in dispute? The deeds were executed by the same grantor, at the same time, and must be regarded as parts of one and the same transaction. In this view, the intention of the parties as to the lands which were intended to be conveyed becomes a material question. This should, if possible, be gathered from the deeds themselves, rather than by resorting to extrinsic evidence. If the lands conveyed are capable of identification by a construction of the deeds themselves, it will not be necessary to avail ourselves of evidence *aliunde*. "To give a proper construction to a description of property conveyed by deeds, the Court will place itself as nearly as possible in the position of the contracting parties, and their intent will be ascertained in the same manner as in the case of any other contract." (*Kimball* v. *Semple*, 25 Cal. 440.) Reading these deeds together as parts of one transaction, one thing is found which is common to both; that is, both tracts of land, or the entire 5,000 acres, were to be located between the southern line of the rancho, and a northern line to be drawn from a point on the Sacramento river, at a distance of a Spanish league south of the mouth of Deer Creek, due east to the easterly boundary line of the rancho. And one thing is peculiar to the Wilson deed— that is, if there shall not be found between this northern line and the southern boundary line, a sufficient quantity of land to make up 4,500 acres after the location of the 500 acres, according to its description, then, whatever might be necessary to make up the 4,500 acres was to be taken from the south-east corner of the rancho. The Ford tract, according to its descrip-

tion, was to be "taken off of the south-westerly corner of the rancho," in a rectangular form, with a frontage on the Sacramento River of not more than one-half the depth of the tract."

Both tracts were, therefore, to front on the river, and south of a line to be drawn eastward from a point on the river one Spanish league south of the mouth of Deer Creek. But, according to the description in the Wilson deed, the 4,500 acres were to be "taken off of the lower or most southerly portion of the rancho," extending its full width from east to west. There is no such description or call in the Ford deed. From its absence in this deed we infer that it must have been understood and intended between the parties that the Wilson deed should be first located, and that its position should be in the lower portion of the ranch, between the southern boundary line of the ranch, and the southern line of the Ford tract. Wilson, in fact, immediately located his 4,500 acres on that portion of the rancho, so as to leave the Ford tract of 500 acres to the north of the 4,500 acres, and south of the northern line, a Spanish league south of the mouth of Deer Creek; and has been, with the acquiescence of all the parties to the deeds, from the date of his deed, in the possession of that portion of the rancho. Giving to the Wilson tract that location as its natural position, according to the calls of his deed, it follows that the 500 acres were to be located on the south-westerly corner of the ranch after the location of the Wilson tract. Ford never took possession of his land, but the land described in the complaint is situated on the south-westerly corner of the rancho with reference to the Wilson tract, and between the northern line of Wilson's land and the location of the northern line, drawn from a point on the Sacramento River, a Spanish league south of the mouth of Deer Creek, and is, we think, identical with the land described in the Ford deed.

The defendants cannot invoke the Statute of Limitations as a bar to the plaintiff's action, because, although the defendants are in possession, claiming adversely to the plaintiff, yet that possession commenced on the 6th day of December, 1875, when they entered under their deeds from Gerke, and this action was commenced on the 7th of February, 1876. Gerke, it is true, had been in possession of the land by himself and tenants, from 1864

until he conveyed it to the defendants, and had cultivated it and paid the taxes upon it, but he never claimed to hold it adversely to Ford. The possession of the defendants cannot, therefore, be tacked on to that of their grantor, so as to render adverse the possession prior to the time when they received their deeds. (*McCracken* v. *City of San Francisco*, 16 Cal. 591.) And there being no adverse possession of the land for the period of time prescribed by the Statute of Limitations, it follows that the cause of action was not barred. (*Thompson* v. *Pioche*, 44 Cal. 517 ; *Same* v. *Felton*, 54 Cal. 547.)

Order granting a new trial affirmed.

McKINSTRY, J., and ROSS, J., concurred.

By the COURT (in bank) :

The petition for the hearing of this cause by the Court, in bank, is denied. We think the judgment rendered by Department No. 1, affirming the order of the District Court granting a new trial, correct, under the circumstances appearing in the record. But all that portion of the opinion of Department No. 1, respecting the Statute of Limitations, and the construction of the deeds in question, is withdrawn.