[Civ. No. 25123.   Second Dist., Div. Four.   Apr. 25, 1962.]

PALOS VERDES CORPORATION, Plaintiff and Appellant,
v. THE HOUSING AUTHORITY OF THE COUNTY
OF LOS ANGELES et al., Defendants and Appellants;
MICHAEL J. RUSSO, Intervener and Appellant.

Musick, Peeler & Garrett, Jesse R. O'Malley and Frederick B. Warder, Jr., for Plaintiff and Appellant.

Francis C. Whelan, United States Attorney, Donald A. Fareed, Ralph F. Bagley, Jr., Meyer Newman and Jordan A. Dreifus, Assistant United States Attorneys, T. Ed Scarborough, Wright, Wright, Goldwater & Mack, Loyd Wright, Edgar R. Carver, Jr., and Robert E. Aitken for Defendants and Appellants.

Wade & Wade and James W. Wade for Intervener and Appellant.

BURKE, P. J.—This appeal is brought to consider the effect of a conveyance of a 98.6-acre parcel of real property made in 1939 by plaintiff Palos Verdes Corporation, herein termed "Palos Verdes," to defendant The Housing Authority of the County of Los Angeles, herein termed "the Authority," and to determine the right of the Authority to subsequently sell a 16.916-acre portion of the larger parcel.

The action in the trial court was commenced in July 1955 seeking a reformation of the instrument of conveyance, imposition of a constructive trust, an injunction and to quiet title. After a trial in November and December 1957 judgment was entered on March 1, 1960. The judgment provided in part as follows:

1. The entire land acquired by the Authority by the deed of November 27, 1939, was donated and dedicated to, and for use as, a housing project and is held in trust by the Authority for such purposes;

2. The Authority is enjoined from selling any part of the land;

3. Plaintiff Palos Verdes is not entitled to any reformation of its deed of November 27, 1939;

4. The Authority does not hold title to the real property or any part thereof as constructive trustee for or on behalf of Palos Verdes.

The facts can be briefly summarized as follows: The Authority was organized immediately after enactment of the California Housing Authority Law in March 1938. Palos Verdes offered a donation of land in April of the same year. Negotiations and discussions were engaged in between Palos Verdes, the Authority and United States Housing Authority, herein termed "U.S.H.A.," over a period of twenty months resulting in a deed in November 1939 conveying 98.6 acres of land, herein termed "the property," to the Authority.

The Authority thereafter constructed approximately 250 public housing dwelling units utilizing approximately 35 acres of the land conveyed. In November 1954 the Authority declared the remaining undeveloped property (approximately 64 acres) as separate from and excess to the housing project. A 16.916-acre parcel of the land declared to be excess was advertised for sale in May 1955. Michael J. Russo, plaintiff in intervention, herein termed "Russo," made the high bid of $85,500 which was accepted by the Authority and an escrow was entered into to consummate the sale.

The title insurance company utilized in the transaction

refused to issue a policy of title insurance without a release of the rights, if any, of Palos Verdes. Thereafter Palos Verdes commenced this lawsuit.

In 1937 Congress passed the United States Housing Act, commonly known as the "Wagner-Steagall Housing Act," referred to herein as the "federal housing act." In March 1938 the California Legislature enacted the state housing authority law (Health and Safety Code, §§ 34200-34368), termed herein as the "state housing act," under which the Authority was organized in April 1938. The declared purpose of the federal housing act was to effect slum clearance and to develop, construct and operate low-rental public housing projects with the financial assistance of U.S.H.A.

The federal housing act provides for federal interest-bearing loans of up to 90 per cent of the cost of such projects, to public housing agencies to assist development and acquisition of low-rent housing projects. The loans are secured in such manner as the United States deems advisable. By inference there arises a requirement of a 10 per cent local contribution.

Immediately after formation of the Authority, Palos Verdes, by letter of April 23, 1938, offered to dedicate 500 of its approximately 12,000 acres of land on the Palos Verdes Peninsula with an expressed expectation that the 500 acres might cover the 10 per cent local contribution necessary to obtain the federal loan for a housing project. The offer of 500 acres was withdrawn, however, on May 18, 1938.

The Authority, in a letter to Palos Verdes on June 7, 1938, stated that it was considering submitting the housing project in the harbor area to U.S.H.A. for tentative approval and asked Palos Verdes if it was willing to donate an area in San Pedro Hills to be used in connection with such a project.

Palos Verdes replied that it would give a sufficient amount of land for a housing development, "provided it is agreed that no stores or businesses of any kind shall ever be operated on the land."

By a resolution adopted August 29, 1938, the Authority resolved that its first application to U.S.H.A. be known as the Harbor Hills Project, consisting of 500 units to be equally divided between two sites. The 98.6-acre parcel which is the subject matter of this action was one of these two sites and was further designated "Cal.-2-2."

On September 2, 1938, Palos Verdes sent a letter to the Authority which stated that it would deed to the Authority without charge two parcels of 65 acres and 30 acres, respec-

tively, lying one on each side of Palos Verdes Drive North and west of Western Avenue, "provided the authority will use this for dwelling purposes only" and providing "that there shall be no business thereon." Palos Verdes expressly retained all subsurface oil rights. The letter further provided that "in the event it is decided to use only one of the two parcels of 65 acres and 30 acres, respectively, then the one not utilized for housing, parks or schools shall be deeded back to the Palos Verdes Corporation."[1] The letter further provided "This tender of the housing site, school sites and parks shall remain in full force and effect until November 16, 1938."

By resolution adopted September 6, 1938, the Authority adopted the 95-acre site as the "westerly site of the first harbor project" and directed its executive director to notify Palos Verdes that its offer of 95 acres for this site is accepted. During the period from September 6, 1938, until August 5, 1939, a number of communications passed between the Authority and Palos Verdes culminating in a proposed "offer of donation of land" sent by the Authority on the latter date for Palos Verdes' approval. This "offer of donation of land" was, with minor changes, the final offer of donation preceding the execution of the deed. This offer of donation contained eight provisions briefly enumerated as follows:

1. Agreement to donate and deed elementary school site.

2. Agreement to donate and deed junior high school site.

3. Agreement to donate and deed park areas.

4. Donation of easement for utility lines connecting site with existing utilities in general vicinity.

5. Provision protecting easements for utility pipe and wire lines now existing on site.

6. Provision preventing operation of business on site.

7. Provision preventing water being obtained from water basin beneath the site.

8. Reversion clause in case project is not undertaken by fixed date.

(It is noteworthy that only the above numbered provisions 5, 6 and 7 were included in the final deed.)

In compliance with a requirement of U.S.H.A. the offer of donation also provided that "Upon closing the transaction the Donor shall convey to the Local Authority, or its assignee or nominee, by gift deed, a good and marketable fee simple

---

[1]The parties referred frequently in negotiations to 95 acres or two parcels of 65 and 30 acres. Ultimately an accurate survey of the area showed the subject property to contain 98.6 acres.

title thereto . . . free and clear of all liens, easements, restrictions, leases and encumbrances of any kind, except (taxes)."

A. E. Hanson, Executive Vice President of Palos Verdes, advised the Authority by letter of August 11, 1939, that the offer of donation was satisfactory.

Copies of the proposed deed and the offer of donation of land were prepared and sent on October 26, 1939, to Mr. Harold Streight, counsel for Palos Verdes, for his approval. After receiving them back from Mr. Streight, the Authority on November 3, 1939, sent a copy of the deed to U.S.H.A. for its approval. After suggesting a minor correction U.S.H.A. approved the proposed deed.

At a special meeting of the board of directors of Palos Verdes held in New York on November 27, 1939, the board by resolution authorized specified officers to execute a quitclaim deed of the property to the Authority. The resolution recited that the "advantages which will accrue to [Palos Verdes] by reason of the conveyance of [the property] to [the Authority] will constitute ample and valuable consideration for such conveyance, and that conveyance will be for the best interests of this corporation."

Palos Verdes, by deed executed November 27, 1939, conveyed "all of its right, title and interest in and to" approximately 98 acres of land near Western Avenue and Palos Verdes Drive North in Los Angeles County to the Authority.

The deed contained "reservations and exceptions" as follows: (1) grantor reserved a reasonable right of ingress and egress to itself and easement holders; and (2) grantor reserved all subsurface water rights but without any right to drill.

The deed also contained "covenants running with the land" as follows: (1) relating to use of water, not pertinent to this case; (2) prohibiting the Authority or its successors, assigns or transferees from installing, operating or permitting the installation or operation of any business unless Palos Verdes shall not have in operation an adequate neighborhood business center within six months after the housing project shall be 90 per cent occupied.

At a regular meeting of the board of commissioners of the Authority on December 13, 1939, the board unanimously adopted a resolution that the executive secretary of the Authority be authorized and directed to accept and record the deed of November 27, 1939, from Palos Verdes "which is to be used for the site of Harbor Hills Project Cal-2-2."

The deed and resolution of the Authority accepting the deed were both recorded. Taxes which had accrued on the property while it was owned by Palos Verdes were thereafter cancelled by the County of Los Angeles.

Although not directly pertinent it is noteworthy that on July 24, 1940, Palos Verdes executed a quitclaim deed of an 84.1-acre parcel to the County of Los Angeles expressly providing that said parcel "shall be used for public park purposes only, and said County of Los Angeles shall not . . . use the same, or any part thereof, for any other purpose whatsoever." This deed further expressly provided an express condition subsequent to right of reentry on "breach of any such covenant, condition or restriction."

A similar deed of Palos Verdes to the Los Angeles High School District of a 13-acre parcel "for public school purposes only" was executed also containing an express condition subsequent and right of reentry.

The Authority subsequently constructed approximately 250 public housing dwelling units on the property. Only approximately 35 acres of the lands encompassed by the deed had housing constructed thereon. However, housing was constructed on each side of Palos Verdes Drive North. Approximately 64 acres consisting of parcels on each side of Palos Verdes Drive North were never developed. A business center was never developed by Palos Verdes on the east side of Western Avenue, nor was a business center ever constructed on the property. The adjacent area on which Palos Verdes expected to develop a shopping center was condemned by the United States Navy during World War II.

U.S.H.A. either purchased or otherwise committed itself on $736,922.70 of notes and bonds of the Authority sold or issued to finance the construction of housing project Cal-2-2 by September 4, 1940.

U.S.H.A. never approved the construction of any additional units on the property over and above the 250 units originally built and no additional units were ever built.

On November 18, 1954, the board of commissioners of the Authority passed a resolution resolving that an undeveloped portion of the property consisting of approximately 64 acres is surplus to the needs of Harbor Hills Project Cal-2-2.

The Authority thereafter issued an invitation for bids for the sale of parcel 3 containing 16.916 acres, received bids thereon and, as previously indicated, entered into an escrow

with Russo who was the highest bidder at $85,500 for said parcel 3. When the title company refused to issue a policy of title insurance on the property sold to Russo, Palos Verdes started this action.

Defendants Authority and U.S.H.A. jointly appeal from the part of the judgment of the trial court holding that there was a dedication of the property to use as a public housing project and because of that dedication the Authority has no power to declare unused portions of the land as surplus to its needs and dispose of such portions by sale or otherwise.

The Authority and U.S.H.A. contend: (1) where the enabling statute of a housing authority expressly authorizes the sale of land acquired by the authority, land so acquired by fee simple unconditional deed and later declared surplus to its needs may be sold as a matter of law; (2) Palos Verdes, the Authority and U.S.H.A. negotiated over a period of 17 months following the original offer and all parties knew and understood that an unconditional deed showing good and marketable title in fee simple in the Authority was required; that such deed would be the written consummation of the negotiations; that any conclusion of dedication is negated by the deliberate exclusion of purpose of restrictions of use in the deed; and (3) no substantial evidence supports the trial court's holding of dedication.

Plaintiff Palos Verdes appealed from those portions of the trial court's judgment declaring that plaintiff was not entitled to reformation of the deed and that the Authority does not hold the property as constructive trustee for plaintiff.

Palos Verdes contends: (1) the court should reform the deed to describe only the land utilized by County Housing Authority for Public Housing Project Cal-2-2 to prevent a constructive fraud or to correct a mutual mistake made by the parties; (2) the court should impose as against defendant County Housing Authority a constructive trust of that portion of the real property which was not needed or utilized by said County Housing Authority for public housing purposes to prevent an unjust enrichment by reason of the breach of defendant's promise to reconvey or to prevent constructive fraud, and further, the mistake of the parties in connection with the conveyance is an additional basis for imposing a constructive trust on that portion of the property not used for public purposes; or (3) in the alternative, plaintiff is entitled to the declaration of the court that where, as in the instant case, a public agency abandons the use for which the

land was dedicated or such use is extinguished or becomes impossible, the real property reverts to the grantors.

Plaintiff in intervention Russo appeals from the part of the judgment of the trial court which holds that the property was dedicated to the sole and exclusive use of a public housing project and that as a result thereof no part thereof may be sold or used for any other purpose. Russo contends: (1) the trial court's conclusion that Palos Verdes and the Authority possessed an intent to dedicate is contrary to the evidence and to the findings of fact; (2) the trial court committed substantial error in admitting extrinsic evidence of an alleged intent to dedicate the property and in adding a provision of dedication and use restriction to the deed by implication of law; and (3) the Authority having acquired the fee title to the property rather than a mere easement thereon, the property is not subject to any dedicatory restrictions on use or disposition.

The primary issue to be decided in this case is whether there was a dedication of the property to use as a public housing project. ▆▆▆ A common-law dedication is a grant and a gift of land or an interest in land to the public for a public use. ▆▆▆ It requires an intent on the part of the owner to dedicate and acceptance by the public. (*Union Transportation Co.* v. *County of Sacramento,* 42 Cal.2d 235, 240 [267 P.2d 10].) ▆▆▆ The intention of the owner to dedicate land to a public use must be unequivocally manifested. (*Union Transportation Co.* v. *County of Sacramento, supra; Burk* v. *City of Santa Cruz,* 163 Cal. 807 [127 P. 154]; *Cordano* v. *Wright,* 159 Cal. 610, 620 [115 P. 227, Ann. Cas. 1912C 1044].)

▆▆▆ Where the claimed dedication assertedly arises out of a conveyance, the deed itself is the best evidence of whether or not the grantor intended a dedication. ▆▆▆ The primary object of the interpretation of a deed is to ascertain and give effect to the intention of the parties, especially that of the grantor, as it existed at the time of the execution of the instrument. (*Pinsky* v. *Sloat,* 130 Cal.App.2d 579 [279 P.2d 584].)

▆▆▆ The intention of the parties to a grant is to be gathered, if possible, from the instrument itself and is determined by a proper construction of the language used, rather than by resorting to extrinsic evidence. (*Pulliam* v. *Bennett,* 55 Cal. 368; *Pinsky* v. *Sloat, supra,* 130 Cal.App.2d 579, 588.)

■ If the language of a deed is plain, certain and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed. (*Laux* v. *Freed*, 53 Cal.2d 512, 523 [2 Cal.Rptr. 265, 348 P.2d 873].)

■ In the absence of mistake, fraud, or other matter affecting the validity of the instrument, and except where collateral matters are involved, a deed executed in consummation of an agreement between the parties merges all prior negotiations and agreements relating thereto; and, with the exceptions noted, the deed becomes the measure of the rights of the parties. (Civ. Code, §§ 1625, 1638, 1639; *Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472, 479 [101 P.2d 1099, 130 A.L.R. 120]; *Riley* v. *North Star Mining Co.*, 152 Cal. 549, 556 [93 P. 194]; *Johnson* v. *Ware*, 58 Cal.App.2d 204, 206 [136 P.2d 101]; *Sisk* v. *Caswell*, 14 Cal.App. 377, 388 [112 P. 185].)

In its findings of fact and conclusions of law the trial court found:

(1) That the deed was unambiguous, free from fraud or mistake and that it recited what the parties intended it to say and that there was no representation or misunderstanding as to the meaning or legal effect of any of its provisions.

(2) That the deed was the consummation and formal memorial and record of the prior offers of donation and acceptance thereof, and that all of the negotiations leading up to the execution of the deed, which preceded or accompanied such execution, not set forth in the deed, were merged in and superseded by the deed.

(3) That extrinsic evidence of a condition subsequent or right of reverter as to any part of the property not used for a housing project was inadmissible.

■ (4) That the Authority took the property subject only to the covenants, conditions and restrictions expressly *and by implication of law* therein set forth in the deed, and the deed contains no express covenants, restrictions or conditions subsequent as to the manner and extent of the use of the property. (Emphasis added.)

The above recited findings and conclusions of the trial court are supported by substantial evidence in the record. However, one exception need be noted. The trial court by the italicized language concluded that the circumstances surrounding the deed indicated that Palos Verdes donated the property to the Authority for a housing project and no other

purpose; the dedication and restriction of use was thereby implied by law into and became a restriction of the deed.

With this we cannot agree. Such a conclusion is contrary to the findings made by the trial court (1) that the deed was the formal memorial of the negotiations between the parties and that such negotiations are merged in and superseded by the deed; (2) that the deed said precisely what the parties intended it to say; (3) that nothing was omitted from the deed which was intended to be inserted.

On reading the provisions of the deed no basis can be found for the trial court's "conditions implied by law" theory. Therefore, that theory must have its foundation in evidence extrinsic to the deed.

Under the findings of the trial court and with the exceptions noted we hold that the interpretation of the deed is within the normal operation of the rule which precludes consideration of parol evidence and evidence of surrounding facts and circumstances. (Civ. Code, §§ 1625, 1638, 1639; Code of Civ. Proc., §§ 1856, 1962, subd. 2.) The deed in this case, as found by the trial court, is neither unclear, uncertain nor ambiguous. No mistake or fraud is apparent. Therefore, under the well established exclusionary rule, neither parol evidence nor surrounding facts or circumstances will be considered to add to, detract from, or vary the terms of the deed to determine the estate conveyed. (Code Civ. Proc., §§ 1856, 1860; *Laux* v. *Freed,* 53 Cal.2d 512, 523 [2 Cal.Rptr. 265, 348 P.2d 873]; *Pinsky* v. *Sloat,* 130 Cal.App.2d 579, 588-589 [279 P.2d 584].)

The trial court relied upon *Slavich* v. *Hamilton,* 201 Cal. 299, 304 [257 P. 60], as authority for the proposition that when a deed is but one of the circumstances surrounding an implied dedication, all the other circumstances may be considered together with the deed, and the implication, if any, is an implication of fact. The reason why the court in *Slavich* v. *Hamilton, supra,* looked to extrinsic circumstances surrounding the deed was because the deed was ambiguous. Here there was no ambiguity in the deed as found by the trial court, and such finding is supported by the record.

Construing the deed from its four corners as we must, we find no conditions, restrictions or reservations, express or implied in law, which would indicate the existence of an intention to dedicate the property to a particular public use. If Palos Verdes had intended such a restriction in the

deed it could have easily inserted words similar to those it used in separate quitclaim deeds to Los Angeles County, ". . . for public park purposes only . . ." and to the Los Angeles High School District, ". . . for public school purposes only. . . ." Courts will not read such words into a contract or deed without a clear showing that it is a natural implication from the language used or is indispensable to effectuate the expressed intention of the parties. (*Lippman* v. *Sears Roebuck & Co.*, 44 Cal.2d 136, 145 [280 P.2d 775].)

Even if we assumed that all the facts and circumstances surrounding the deed could have been properly considered by the trial court, we still do not find any basis upon which an "implied in law condition" of dedication could have been found. Palos Verdes was well aware of the fact that U.S.H.A. on many occasions insisted upon a good and marketable fee simple title being conveyed to the Authority. Palos Verdes complied with that requirement by execution of the deed of November 27, 1939. There is no merit to the finding of the trial court and the argument of Palos Verdes that the designation "marketable fee simple title" related only to the security interest in the property held by U.S.H.A. ▮▮▮ To qualify as marketable a title must embrace both the legal and equitable estates, must be free from any encumbrance, must be defensible and salable. (*Hocking* v. *Title Insurance & Trust Co.*, 37 Cal.2d 644, 649-650 [234 P.2d 625, 40 A.L.R. 2d 1238]; *Mertens* v. *Berendsen*, 213 Cal. 111 [1 P.2d 440].)

▮▮▮ We hold that Palos Verdes, by the clear and unambiguous meaning of the terms of the deed of November 27, 1939, conveyed to the Authority a good and marketable fee simple title to the property which was not subjected to dedication or limitation for a particular use. Accordingly, the Authority is empowered to sell all or any part of the property subject only to the provisions of the United States Housing Act as amended (42 U.S.C. §§ 1401 et seq.) and the California Housing Authorities Law (Health & Saf. Code, §§ 34200-34402). The injunction against sale of any part of the land by the Authority imposed by the trial court should be dissolved.

With respect to the contentions of Palos Verdes concerning alleged errors of the trial court in refusing to reform the deed, to impose a constructive trust and to find a right of reverter, we find such rulings adequately supported by the record.

Judgment reversed with directions to enter judgment in favor of defendants the Authority and U.S.H.A. and plaintiff in intervention Russo; each party to bear its own costs on appeal.

Jefferson, J., and Balthis, J., concurred.

A petition for a rehearing was denied May 7, 1962, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied June 20, 1962.