Opinion
COLE, P. J.
Plaintiffs appeal from a judgment of dismissal entered after defendant’s demurrer was sustained with leave to amend and plaintiffs declined to amend. We affirm.
In their complaint, plaintiffs alleged that defendant, Safeco Title Insurance Company issued to them a title insurance policy on September 4, 1974. The policy is incorporated in the complaint. In relevant part, it insured plaintiffs against loss or damage incurred by them by reason of unmarketability of title to real estate described in Schedule “A” of the policy. The complaint further alleged “On the dates [ízc] of issuance of said title insurance policy, title to said real property was unmarketable, because of its division in violation of the California Subdivision Map Act, and the Los Angeles County Subdivision Ordinances.” The complaint *Supp. 3 also alleged that plaintiffs are prohibited from reselling the real property by virtue of section 66499.30 of the Government Code and that any sale by them would constitute a misdemeanor under section 66499.31 of the Government Code. By reason of the violation of the Subdivision Map Act, they alleged, the real property had no fair market value and defendant is liable for the policy amounts. Finally, the complaint alleged that defendant refused to pay plaintiffs’ claim made under the policy because of an exception from liability provided in Schedule “B.”[1]
Defendant generally demurred to the complaint on the ground that it failed to state a cause of action. In support of its demurrer, defendant alleged two bases: (1) that the title to defendant’s property had not been rendered unmarketable because the property had been subdivided in violation of the subdivision laws and (2) that even if the title were rendered unmarketable, the exclusion set forth in footnote 1 precluded coverage.[2]
The trial court sustained the demurrer with a minute order reading as follows:
“The complaint fails to allege facts sufficient to constitute a cause of action (CCP 430.10(E)) for each of the following reasons:
*Supp. 4 “1. Non-compliance with the Subdivision Map Act by plaintiffs’ vendors does not render title unmarketable within the meaning of paragraph 2, page 1 of the policy of title insurance. (Exhibit A of complaint) See Hocking v. Title Insurance etc., 37 C.2d 644.
“2. The title policy contains an exclusion against loss or damages by reason of ‘any law, ordinance or governmental regulation . . . prohibiting a separation in ownership or a reduction in the dimension or area of the land, or the effect of any violation of such law, ordinance or governmental regulation.’ (Schedule B, paragraph 7 of Exhibit A.) This court construes the foregoing language as including a subdivision of land. Thus, if plaintiffs’ vendor failed to comply with subdivision laws, any damage or loss resulting to plaintiffs by reason of such non-compliance would not be covered by the title policy.
“The court doubts plaintiffs can successfully amend. However, plaintiffs are granted 30 days to amend after defendant serves notice of this ruling.
“Defendant Safeco to give notice.”

Unmarketability of Plaintiffs’ Title

At the time of issuance of the title insurance policy involved here the Subdivision Map Act was found in the Business and Professions Code. Those provisions have since been repealed and the Subdivision Map Act is now set forth in the Government Code. Our reference to Business and Professions Code sections is to those sections as they existed at the time of issuance of the policy. On this appeal plaintiffs urge as they did in the trial court, that because their property had been divided in violation of the Subdivision Map Act,[3] their title was rendered unmarketable. Their argument is that this is so because “[i]t is unlawful to sell property created in violation of the Subdivision Map Act.” They rely for this conclusion on the provisions of Business and Professions Code section 11538, subdivision (a): “(a) It is unlawful for any person to offer to sell or lease, to *Supp. 5 contract to sell or lease, or to sell or lease any subdivision or any part thereof until a final map thereof in full compliance with the provisions of this chapter and any local ordinance has been duly recorded or filed in the office of the recorder of the county in which any portion of the subdivision is located.” and on the provisions of Business and Professions Code section 11541:
“Any offer to sell, contract to sell, sale, or deed of conveyance made contrary to the provisions of this chapter is a misdemeanor, and any person, firm or corporation, upon conviction thereof, shall be punishable by a fine of not less than twenty-five dollars ($25) and not more than five hundred dollars ($500), or imprisonment in the county jail for a period of not more than six months, or by both such fine and imprisonment.”
As noted above, the trial court sustained the demurrer, inter alia, on the ground that under the principle of Hocking v. Title Ins. & Trust Co. (1951) 37 Cal.2d 644 [234 P.2d 625, 40 A.L.R.2d 1238], title was not rendered unmarketable. Much space is devoted in the briefs on this appeal to plaintiffs’ attempt to distinguish Hocking and defendant’s efforts to show why it applies here.[4]
We do not reach the question whether Hocking is or is not applicable. The Subdivision Map Act does not make it unlawful for a person in plaintiffs’ position to resell the property.
“The Subdivision Map Act clearly is designed to restrict activities of the subdivider—the one ‘who causes land to be divided into a subdivision’(§ 11508). Its prohibition (§ 11538) and its penal sanctions (§ 11541) run only to the affirmative act of selling or offering for sale, and not to purchase. The act carefully provides that a deed made contrary to its terms is voidable ‘at the sole option of the grantee’ (§ 11540). The restraint here exercised by the Legislature is emphasized by the provision that, while ordinances may cover the same subject matter, ‘the validity of any conveyance’ shall not be affected except ‘to the extent and in the same manner provided in Section 11540.’ (§ 11540.1.) The rights of the *Supp. 6 city or county are recognized in the grant of the remedy of injunction (§ 11542).” (Keizer v. Adams (1970) 2 Cal.3d 976, 979-980 [88 Cal.Rptr. 183, 471 P.2d 983].)[5] In line with this reasoning it has further been stated in Scrogings v. Kovatch (1976) 64 Cal.App.3d 54, 58 [134 Cal.Rptr. 217]: “The act does not require an innocent purchaser to suffer for a violation by his grantor.”
In these circumstances, we do not see why plaintiffs’ title is not fully marketable. To reach this conclusion, we adopt as the definition of “marketability” the language of Palos Verdes Corp. v. Housing Authority (1962) 202 Cal.App.2d 827, 838 [21 Cal.Rptr. 225] that “[t]o qualify as marketable a title must ... be defensible and salable.” While the complaint does not expressly allege that plaintiffs were unaware of the Subdivision Map Act violation when they purchased the property, we assume that that is the case since otherwise another provision of the policy not at issue here would preclude coverage.[6]
In their reply brief appellants refer to Government Code sections 66499.34 to 66499.36, originally enacted in 1972 as Business and Professions Code sections 11538.1 to 11538.3. They urge that these sections were enacted in response to Keizer v. Adams, and that their effect is to make the Subdivision Map Act enforceable against persons in their position. The first of these provisions, Government Code section 66499.34 does no more than to state what Keizer itself said—that a local agency can impose conditions on development of the property. Section 66499.35 is to the same effect. And, section 66499.36 provides a method by which a local agency which has knowledge that real property has been subdivided in violation of the act can record a notice of such violation. There is no allegation in the complaint here that Los Angeles County had such knowledge or had recorded such a notice. Section 66499.32, subdivision (b), also relied upon gives a cause of action to appellants against their grantor. It is not to be presumed that appellants would themselves convey *Supp. 7 the property to another without full disclosure. The section does not aid appellants’ cause.
It is true that it may be necessary for plaintiffs to comply with reasonable conditions with respect to their property as could have been required of the grantor as a condition of subdividing the latter’s tract of land under the provisions of the Subdivision Map Act and any county ordinances (Keizer v. Adams, supra, 2 Cal.3d at p. 981) but such conditions cannot be said to make the title unmarketable (and in the absence of clarifying amendments to the complaint which plaintiffs declined to make we do not see how the potentiality of such conditions can be said to render the real property without fair market value).

Applicability of the Exclusion

Since we hold for the reasons stated above that plaintiffs’ title was not unmarketable, we do not reach the interesting question whether the definition of “land” in the title policy renders inapplicable the claimed exclusion relied upon by defendant in reciting plaintiffs’ claim.
The judgment (order) of dismissal is affirmed.
Pacht, J., and Ibáñez, J., concurred.

As herein applicable, Schedule “B” excludes from policy coverage a loss arising from “Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or the effect of any violation of any such law, ordinance or governmental regulation.”

With respect to the exclusion, plaintiffs underlined in their complaint the phrase “occupancy, use or enjoyment” apparently intending to allege that this was the particularly applicable portion of the exclusion which defendant sought to invoke. However, in its points and authorities in support of demurrer, defendant stated that it agreed with plaintiffs that the underlined phrase “has nothing to do with this case.” Rather, defendant contended the applicable portion of the exclusion was that referring to laws and ordinances prohibiting “a separation in ownership or a reduction in the dimensions or area of the land or the effect of any violation of such law, ordinance, or governmental regulation.” On this appeal, new counsel for defendant do not refer to the concession in the trial court papers that the “occupancy, use or enjoyment” language was not involved in this case, but attempts to rely on that language as an additional basis to support the trial court’s ruling.
While it is true that in reviewing rulings oh demurrer an appellate court looks to the correctness of the result reached, and not the reasons given, it would in these circumstances be unconscionable to allow defendant to resurrect a disclaimed exemption. We need not further discuss this matter since our affirmance is not granted on this portion of the exemption clause in any event.

On this appeal, as in the trial court, the alleged violation was said to be the failure of plaintiffs’ vendor to file any final subdivision map for record. We do not pursue the question whether paragraph 6 of the complaint, set forth in full in the text above, is clear enough to show that that was the particular violation alleged or whether defendant is precluded by virtue of Code of Civil Procedure section 430.80 from now arguing that the complaint was uncertain within the meaning of Code of Civil Procedure section 430.10, subdivision (f).

In Hocking, a plaintiff bought property in a Palm Springs subdivision where a subdivision map had been recorded. Plaintiff complained, however, that her title was unmarketable because the Palm Springs City Council approved and accepted the subdivision map which was then recorded in violation of a Palm Springs ordinance which said that no map could be approved or accepted unless certain agreements and bonds providing for the grading and paving of streets were first obtained. The Hocking plaintiff claimed that since this had not occurred, she could not sell her property. The Supreme Court held that in that context plaintiff’s complaint related to the condition of her land with respect to street improvements and did not relate to the condition of her title.

The provisions of Business and Professions Code sections 11538, subdivision (a) and 11541 are now found, without substantive change, in Government Code sections 66499.30 and 66499.31.

There is no coverage for “defects, liens, encumbrances, adverse claims or other matters created, suffered, assumed or agreed to by the insured claimant; (b) not shown by the public records and not otherwise excluded from coverage but known to the insured claimant either at Date of Policy or at the date such claim acquired an estate or interest insured by this policy ... or (e) resulting in loss or damage which would not have been sustained if the insured claimant had been a purchaser or encumbrancer for value without knowledge.”